VILLAGE OF CAIRO, Missouri, Respondent,

v.

BODINE CONTRACTING COMPANY, Appellant.

No. WD 35309.

Missouri Court of Appeals, Western District.

Jan. 29, 1985.

Timothy R. Thornton, John H. Swoboda, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, for appellant.

Dick H. Woods, Sheryl B. Etling, Stinson, Mag & Fizzell, Kansas City, for respondent.

Before DIXON, P.J., and SHANGLER and CLARK, JJ.

SHANGLER, Judge.

The Village of Cairo contracted with the Bodine Contracting Company for the installation of a comprehensive sewage and treatment facility. The system was designed in two sections: an interceptor sewer and a sewage collection system. Thus, each project was the subject of a separate bid and separate agreement. Bodine was low bidder on each project and was awarded the work for each by separate contract. A term of both, the Interceptor Contract and the Collection Contract, was that Bodine complete the work within 360 days after receipt of the notice to proceed or of a written work order. Work commenced on June 11, 1981, but neither project was completed within the time defined by contract. A dispute arose between the principals: Bodine contended that the progress payments due on each project had not been met and notified Cairo that unless received within the times specified, the contracts would be terminated. Bodine ceased all work on the projects on October 8, 1982, and on October 11, 1982, Bodine advised the mayor of Cairo that the Collection Contract was terminated. On that same day the mayor gave notice to Bodine that both contracts would be terminated pursuant to contract provisions, and on October 22, 1982, Cairo terminated them. The principals, each, asserted the right to termination under specific provisions of the contracts. A term of the Interceptor Contract allowed the contractor to terminate, upon a seven-day notice, if the certified pay estimates were not met after ten days of presentment. A term of each contract allowed the owner—Village of Cairo—to terminate upon ten days notice for failure of the contractor to correct the conditions cited as the basis for the termination.

The two contracts each contained an arbitration clause, but each was distinctive. Cairo financed the Interceptor Contract with a grant from the United States Environmental Protection Agency [and the Missouri Department of Natural Resources], and the terms of that contract were devised by that federal agency. Cairo financed the Collection Contract with a grant from the Farmers Home Administration of the United States Department of Agriculture, and the terms of that agreement were devised by that federal agency.

On November 2, 1982, Bodine made written demand for arbitration with the American Arbitration Association and cited the Village of Cairo as respondent.[1] Cairo objected to administration by the A.A.A. on the ground that no agreement to arbitrate the disputes subsisted under either of the arbitration provisions. The arbitrator

---

1. The dispute the Bodine demand for arbitration asserted was: that the monthly progress payments received were not in the sums due under the Interceptor Contract and the Collection Contract, but were reduced by the Village of Cairo by deductions for late performance, a delay caused by engineer error and other considerations beyond the control of Bodine—conditions which entitled the contractor to an extension of the time of performance—and so were in breach of the agreements.

ruled nevertheless that an issue of arbitrability existed and that the A.A.A. would continue with the administration of the arbitration. Cairo thereupon brought a suit in the circuit court to enjoin the arbitration and for a declaratory judgment, and a separate count for damages for the Bodine breach of contract. The court adjudicated the separate count for injunction and declaratory judgment in favor of the petition and determined that Cairo was not under obligation to submit any of the disputes to arbitration because no contract to arbitrate those claims subsisted between the principals. The court enjoined Bodine from any demand for arbitration of those disputes. The appeal to this court is from that judgment. § 435.440.1(1).

■ The motion by Bodine for an order to stay the suit by Cairo to enjoin the Administration of the A.A.A. arbitration and to compel Cairo to arbitration of the disputes [which culminated in the judgment under review] asserts the auspices of the Federal Arbitration Act [Title 9 U.S.C.], and alternatively, of the Missouri enactment of the Uniform Arbitration Act [§§ 435.350 to 435.470, RSMo Cum.Supp. 1980]. The response of the Village of Cairo to the demand for arbitration was to deny jurisdiction of A.A.A. under *either* the Federal or Missouri Act.[2] The response of the Village of Cairo to the motion to stay, however, was to acquiesce in the motion contention that the arbitration provisions of the contracts are amenable to jurisdiction under one or the other of the Acts. If—as Bodine asserts and Cairo does not affirmatively dispute—the contract transactions for the collection and interceptor systems involved *commerce* within the sense of §§ 1 and 2 of the Federal Arbitration Act, the question whether the pendent suit is referable to arbitration becomes a matter of federal substantive

**2.** The Village of Cairo disputed the jurisdiction of the American Arbitration Association to administer the Bodine demand for arbitration by a Special Appearance and Reply. That response asserted that the Association was without jurisdiction over the demand under *either* the provisions of the Uniform Arbitration Act [§§ 435.350 to 435.470] *or* the Federal Arbitration Act [9 U.S.C. §§ 1 et seq.]. The A.A.A. jurisdiction lacked under the Missouri enactment because neither contract bore the legend, in ten point capital letters, adjacent to or above the place for signatures—as § 435.460 requires—THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. The Village of Cairo contended in that response to the Association that the lack of the notice that the contracts contained agreements to arbitrate, rendered them unenforceable against the Village. The A.A.A. jurisdiction lacked under the Federal Arbitration Act, that response asserted, because the contracts did not involve interstate commerce within the sense of the Act.

In the suit brought in the circuit court to enjoin arbitration and for declaratory judgment, Cairo does not renew those contentions of want of jurisdiction to arbitrate under either the Missouri or Federal Acts. In the motion by Bodine to stay that suit and to compel arbitration, Cairo does not renew those contentions of jurisdiction. The Cairo position before the courts, both trial and appellate, has been steadfastly and simply that the disputes Bodine asserts in the demand for arbitration are not encompassed in the respective arbitration provisions of the two contracts. There is no contention that the arbitration provisions are not operative for failure to comply with state law or for want of transactions which involve commerce.

Bodine asserts the governance of federal substantive law on the question of the arbitrability of the disputes on the ground that the Interceptor Contract and the Collection Contract are transactions which involve commerce, in that: foreign sureties, vendors and suppliers are involved, and federal administrative agencies are named as obligees of the surety bonds. The record confirms these interstate elements. The United States Supreme Court in *Prima Paint Corporation v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 401, n. 7, 87 S.Ct. 1801, 1805, n. 7, 18 L.Ed.2d 1270 (1967) rejects a narrow construction of *commerce*. An extensive review of the federal and state decisions which implement the breadth of *Prima Paint* concept of *transactions involving commerce* as the basis for federal law jurisdiction in arbitration matters is given in *Burke County Public Schools & Board of Education v. Shaver Partnership*, 303 N.C. 408, 279 S.E.2d 816 (N.C.1981).

Village of Cairo does not contend that it executed either contract without notice that they contained arbitration agreements. Nor do they assert on appeal that either arbitration component is unenforceable for want of the prominent notice required by § 435.460. In any event, for the reasons given in our opinion, we need not choose between the State or Federal Acts, for the same result obtains, and on the same principles.

law [*see* Appendix note 2]. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *State ex rel. St. Joseph Light & Power Company v. Donelson,* 631 S.W.2d 887, 890[2] (Mo.App. 1982). If not, the state law applies. The question presented by the motion—the arbitrability of the demands—and the judicial mechanism to determine the question are the same, whether under the Missouri or Federal Act, and the counterpart sections are promulgated in much the same language. [Subsections 1 and 2 of § 435.355 compared with §§ 2 and 3 of 9 U.S.C.]. Those states which subscribe to the Uniform Arbitration Act, moreover, share the disposition of the Federal Arbitration Act to enforce arbitration agreements as a matter of the cogent public policy in favor of resolution of disputes without resort to the courts. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Ellis v. Rocky Mountain Empire Sports, Inc.,* 43 Colo.App. 166, 602 P.2d 895, 897[1] (1979); *Detroit Automobile Inter-Insurance Exchange v. Reck,* 90 Mich.App. 286, 282 N.W.2d 292, 294[1] (1979), and the other cases collected in Recent Developments: The Uniform Arbitration Act, 48 Mo.L.Rev. 137, 147 n. 95 (1983). And, indeed, the litigants—Bodine and Cairo—intersperse their briefs and arguments with citations from the substantive case law developed under the state and federal Acts—all without distinction.

 A written agreement to submit a present or future controversy to arbitration is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract" —both under the Federal and Missouri Acts[3] [9 U.S.C. § 2 and § 435.350, RSMo 1980]. The respective acts also empower a court to stay a judicial proceeding and to enforce an agreement to arbitrate, or to stay an arbitration where no agreement exists [9 U.S.C. §§ 3 and 4; § 435.355, subsections 1 through 4]. The motion of the contractor Bodine to enjoin the court action and to compel arbitration and the response of the Village of Cairo pose [as to the Interceptor Contract] whether the arbitral provision was operative under the proven circumstances, and [as to the Collection Contract], whether an arbitral provision subsisted at all. In such a determination, the court proceeds summarily without regard to the justiciability of the disputes asserted for arbitration. If the court finds agreement to arbitrate, and that the dispute is encompassed, the court must order arbitration; otherwise, the parties are left to the judicial resort [9 U.S.C. § 4; § 435.-355, subsections 1 through 5]. The obligation to arbitrate, by the very terms of the Acts, rests on free assent and agreement [9 U.S.C. § 2 and § 435.350]. Thus, the subsistence and validity of an arbitration clause is governed by the usual rules and canons of contract interpretation. *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Westbrook School Comm. v. Westbrook Teachers Ass'n,* 404 A.2d 204, 207 (Me.1979), and *see also* the cases discussed in Recent Developments: The Uniform Arbitration Act, 48 Mo.L.Rev. 137, 147 (1983). That determination is relegated to the courts as a question of law [9 U.S.C. § 4 and § 435.355]. *Drake Bakeries, Incorporated v. Local 50, etc.,* 370 U.S. 254, 256, 82 S.Ct. 1346, 1348, 8 L.Ed.2d 474 (1962); *Demers Nursing Home v. R.C. Foss & Son, Inc.,* 122 N.H. 757, 449 A.2d 1231, 1232[1, 2] (1982). On these principles, "a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Atkinson v. Sinclair Refining Company,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962); *Williams v. Clean Coverall Supply Co., Inc.,* 613 S.W.2d 659, 662[3] (Mo.App.1980).

---

**3.** The operation of the Federal Arbitration Act, of course, presupposes [9 U.S.C. § 2] a maritime transaction or a contract transaction which involves commerce. The Missouri version of the Uniform Arbitration Act [§ 435.350] expressly withholds validity from agreements to arbitration in "contracts of insurance and adhesion contracts."

■ The court rested judgment on premises that, as to the Interceptor Contract, the arbitration provision imposes a condition to arbitration that the contractor work progress during any such proceedings,[4] but that Bodine discontinued work on October 8, 1982, and never resumed performance before the demand for arbitration on November 2, 1982. The court determined that, as to the Collection Contract, the dispute involved interpretation of the contract documents, a subject expressly excluded from arbitration by that term of agreement.

### The Interceptor Contract

The arbitration terms of the Interceptor Contract provide:

### 30. ARBITRATION

30.1 All claims, disputes and other matters in question arising out of, or relating to, the CONTRACT DOCUMENTS or the breach thereof, except for claims which have been waived by the making and acceptance of final payment as provided by Section 20, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any court having jurisdiction thereof.

30.2 . . .

30.3 *The CONTRACTOR will carry on the WORK and maintain the progress schedule during any arbitration proceedings,* unless otherwise mutually agreed in writing. [emphasis added]

■ Bodine contends that these terms do not tolerate the sense attributed to them by the trial court: that the contractor continue the work progress as a condition to the demand for arbitration. The contractor contends that the failure to perform work pending arbitration was, at worst, a breach of contract otherwise remediable, and, on sound policy, could not precipitate a forfeiture of the right to arbitrate. Cairo responds that component paragraph 30.3 of the arbitration clause expresses a clear condition that continuation of the work by Bodine precede recourse by the contractor to the arbitration forum. There is no contention, therefore, that a "valid, enforceable and irrevocable" agreement to arbitrate contract disputes does not subsist between them, but only that the conduct of contractor Bodine amounts to a choice to forgo the arbitration forum to resolve them. The Federal and Uniform Acts express a public policy of concern for an unhampered judicial system so supervenient that—once the existence of an agreement to arbitrate is proven—the clause is construed in favor of the arbitrability of a dispute "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). This declaration of principle, although rendered in the context of a labor relations case, serves as rationale for federal and state court decisions in commercial bargains, as well. *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation,* 460 U.S. 1, 27, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 44 [8–10] (3d Cir.1978); *City of Meridian, Mississippi v. Algernon Blair, Inc.,* 721 F.2d 525, 527[3] n 2 (5th Cir.1983); *Borough of Ambridge Water*

---

**4.** The formulation of the judgment "The court further finds ... that there is no contract requiring arbitration between the parties in the circumstances of this case" intimates the adjudication that no agreement to arbitrate subsisted in either contract. The court, however, then goes on to determine the arbitrability of the Interceptor Contract dispute on the failure of Bodine to meet a condition precedent. A condition precedent, of course, presupposes a subsistent contract. *Highland Inns Corporation v. American Landmark Corporation,* 650 S.W.2d 667, 672 [6–9] (Mo.App.1983); 3A Corbin on Contracts § 633 (1960).

*Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498, 501 (1974); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 320 A.2d 558, 570 (1974); *Southeastern Michigan Transportation Authority v. Amalgamated Transit Union Local 1564,* 116 Mich.App. 154, 321 N.W.2d 876, 878 [2, 3] (1982); *University of Alaska v. Modern Construction, Inc.,* 522 P.2d 1132, 1138 (Alaska 1974)—among the many others.

The order to enjoin Bodine from arbitration of the demand under the Interceptor Contract rests on the determination that the terms of agreement require, "as a condition to the right of arbitration," that the contractor maintain the work progress schedule—a condition precedent not performed. Bodine argues that the refusal to continue the work was justified by the failure of Cairo to make the progress payments, and, even if not justified, was merely a breach of contract, and so was itself a subject for arbitration under the terms of that contract provision. Cairo responds that the continuance of the work under the Interceptor Contract was, as the court found, a condition precedent to any right of arbitration, and that the contention by Bodine that its continued performance was made impossible—and therefore excused—by the refusal of Cairo to make progress payments is not supported by the evidence.

We iterate at outset that the inquiry of the court under the Arbitration Acts—Federal and Missouri—is to determine whether a claim is arbitrable: does a valid *agreement to arbitrate* exist, and if so, does the dispute fall within those terms? To that end, the court proceeds summarily to construe the *arbitration agreement* and disregards whether the subsistent dispute has merit under the contract terms. [9 U.S.C. § 3; § 435.355.1 and 2]. In this exercise, "[t]he courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers of America v. American*

*Manufacturing Co.,* 363 U.S. 564, 568[7], 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). [To the same effect is § 435.355.5: "An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown."] The express terms of Arbitration clause 30.1 of the Interceptor Contract *leave all questions of the breach of the contract documents to the arbitrator*—therefore, whether the Bodine discontinuance of performance amounted to a *breach of the contract,* or whether continued performance was excused by the Cairo nonpayment *under the contract* are matters the agreement of the parties leaves to the arbitration forum—unless, of course, the nonperformance of work by Bodine amounted to such a breach of the *arbitration agreement* as to excuse Cairo from its obligation to arbitrate under its terms.

▮ A contract for arbitration, as any other contract, may be breached, but not every breach excuses the other party from the promise to arbitrate, any more than any breach of a construction contract excuses further performance by the other party. 6A Corbin on Contracts § 1443, pp. 442 et seq. (1962); *Drake Bakeries, Inc. v. Local 50, American Bakery, etc.,* 370 U.S. 254, 262 n. 6, 82 S.Ct. 1346, 1350 n. 6, 8 L.Ed.2d 474 (1962). On the other hand, a fundamental breach, a breach vital to further performance [such as unexcused failure to make progress payments to a contractor—*Guerini Stone Co. v. P.J. Carlin Construction Co.,* 248 U.S. 334, 344[7], 39 S.Ct. 102, 106, 63 L.Ed. 275 (1919) ] entitles the other party to repudiate the contract and treat the obligation for further performance as rescinded. *Weber Chimney Co. v. Itasca Paper Co.,* 199 S.W. 141, 143 [1, 2] (Mo.1917). So, also, mere nonperformance of an arbitration agreement, even though unjustified, is not *per se* a repudiation. "Only [o]ne who flatly repudiates the provision for arbitration itself ... ha[s] no right to the stay of a court action brought by the other party." A repudiation [or

waiver] of the arbitration promise results from the disregard of either a procedural or substantive condition that separate clause imposes—such as inaction or delay in the enforcement of the arbitration right,[5] or by a prior election to submit the issue to a court. *Shinto Shipping Co., Ltd. v. Fibrex Shipping Co., Inc.*, 572 F.2d 1328, 1330 (9th Cir.1978); *Marthame Sanders & Co. v. 400 West Madison Corporation*, 401 So.2d 1145 (Fla.App.1981). *See also* the citations on the subject collected in Gedicks, *Contractual agreement to Arbitrate Disputes: Waiver of the Right to Compel Arbitration.* 52 Cal.L.Rev. 1513 (1979). A repudiation results when conduct of a party is so inconsistent with the end of the arbitration clause as to indicate that the right has been abandoned. *Brennan v. Kenwick*, 97 Ill.App.3d 1040, 54 Ill.Dec. 574, 425 N.E.2d 439, 441 (1981). Inconsistency is found from conduct which prevents arbitration, or makes that recourse impossible, or which proceeds "at all times in disregard of the arbitration clause." *EFC Development Corporation v. F.F. Baugh Plumbing & Heating Inc.*, 24 Ariz.App. 566, 540 P.2d 185, 188 [3, 4] (1975).

There is no contention that the Bodine claim that the Cairo failure to make progress payments and of engineer error were breaches of contract not within the scope of the inclusive *all claims* terminology of component paragraph 30.1 of Arbitration clause 30. The judgment denies the order to Bodine on the premise that paragraph 30.3 of that clause imposes on the contractor as a condition precedent to arbitration that the work performance continue. In contract law a *condition* is defined [Restatement (Second) of Contracts § 224 (1979)] as: "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *See also* 3A Corbin on Contracts §§ 628 and 739 (1960); *Highland Inns Corporation v. American Landmark Corporation*, 650 S.W.2d 667, 672[6–9] (Mo.App.1983). The contract language of paragraph 30.3 is: "The CONTRACTOR will carry on the WORK and maintain the progress schedule *during any arbitration proceedings.*" [emphasis added] The contract as written describes an arbitration in the process of administration, and not a process yet to begin. The contractor promises only to carry on as to the work not in dispute while the work in dispute continues in arbitration, and not to continue all work—disputed or not—or risk forfeiture of the arbitration forum. In terms of the contract law of *condition*, therefore, continued performance [by Bodine] is not *an event which must occur before* performance [by Cairo] to arbitrate becomes due. The mutual promises of paragraph 30.1 to arbitrate *all claims* are unconditional: they contemplate that a party may abstain from further work performance—the discontinuance of work by the contractor included—on the good faith belief that the breach of contract by the other is so vital as to excuse further performance. The promise of the contractor in paragraph 30.3 to continue work *during* the arbitration proceeding does not precondition access to the arbitration forum, but gives assurance that the remainder of the contract will be performed while any dispute is administered.

■■■ The integral Arbitration clause 30 as written conforms to the contract principle that there is no inconsistency in the position of a party who demands arbitration and at the same time asserts legal privilege not to proceed with performance. *Drake Bakeries, Inc. v. Local 50, American Bakery*, 370 U.S. 254, 263, 82 S.Ct. 1346, 1351, 8 L.Ed.2d 474 (1962); *Reid Burton Construction Co. v. Carpenters District Council of Southern Colorado*, 535 F.2d 598, 601 (10th Cir.1976). It also expresses the general principle, adopted by a vast preponderance of the courts, that a general provision for the arbitration of all disputes [like the *all claims* paragraph 30.-1] includes within its scope every breach

---

5. Component 30.2 defines the method, manner and time for the demand for arbitration. The judgment of the court found that Bodine complied with all these preliminary conditions to arbitration.

that is asserted and denied, however great in importance, except a breach which amounts to repudiation of the arbitration provision itself. 6A Corbin on Contracts § 1443, at 442 (1962); *also* Recent Developments: The Uniform Arbitration Act, 48 Mo.L.Rev. 137, at 159 et seq. (1983).

■ The right of the contractor to arbitrate the contract disputes was unconditional, and the refusal by Bodine to continue the work progress schedule, therefore, was neither a repudiation nor even inconsistent with access to the arbitration forum.

One case considers an arbitration agreement with exact counterpart components to the Bodine-Cairo clause 30 asserted on the same issues. In *Chester City School Authority v. Aberthaw Construction Company*, 460 Pa. 343, 333 A.2d 758 (Pa.1975), the contractor completed much of the construction of a school building when a flood caused severe damage to the structure. The owner School Authority demanded repair and completion of the structure as performances required under the contract. The contractor denied it was responsible to restore the flood damage and refused to repair without additional payment. The owner School Authority declared the contractor in default and sued for breach of contract. The contractor made formal demand for arbitration, and moved to stay the suit pending arbitration, but the equity court refused and enjoined arbitration instead. The premise of that order was [1.c. 762] that the arbitration clause did not include "any claims arising out of repudiation or termination of the contract."

As preface, the Supreme Court of Pennsylvania noticed first that the state statute was an expression of the public policy in favor of the settlement of disputes by arbitration and, to that end, such agreements were given a liberal construction. The court then turned to the text of the arbitration clause itself. Paragraph 7.10.1 was cast in the same language as paragraph 30.1 of the Bodine-Cairo clause. The court commented [1.c. 764]:

"In the clearest terms conceivable, the drafters of § 7.10.1 have included within the ambit of disputes to be subjected to arbitration, those breaches that would give rise to the repudiation or termination of the contract."

In response to the premise of the equity court in the refusal of the order to arbitrate—that the provision of § 7.10.3 [counterpart of Bodine paragraph 30.3] that the contractor carry on the work during any arbitration proceedings indicated intention that the arbitration procedure was not available after the termination of the contract—the Pennsylvania Supreme Court responded [1.c. 764]:

"In our view, § 7.10.3 was only to provide for continuation of the work in those areas not related to the disagreement ... and [1.c. 765] *merely requires that work not in dispute must be continued during the course of the arbitration proceedings.*" [emphasis added]

*See also Gavlick Construction Company*, 526 F.2d 777, 786 n. 19 (3d Cir.1975) and *State ex rel. Skinner v. Lombard Company*, 106 Ill.App.3d 307, 62 Ill.Dec. 540, 436 N.E.2d 566, 568[1, 2] (1982).

The order of the trial court to enjoin the Bodine Demand for Arbitration of disputes under the Interceptor Contract erroneously applies and declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The order is set aside and the cause is remanded for arbitration in accordance with the agreement of the parties.

THE COLLECTION CONTRACT

The arbitration terms of the Collection Contract provide:

GC–8. *Arbitration. Disputes on matters not governed by the contract documents,* and which otherwise cannot amicably be decided or settled, *shall be arbitrated by three disinterested parties,* one each chosen by the disputing parties and the third by the two first chosen; such arbitration being a condition precedent to any right of legal action. It is hereby intended to lay down a principle of action to be followed where control-

ling statutes do not provide a manner of procedure and legal effect of award by arbitration; in case of conflict, the principles herein set forth shall be locally adapted to the legal requirements of such controlling statutes. Should either party fail to name an arbitrator within 10 days following the appeal to arbitration, his right to arbitration shall lapse. Should either party refuse or neglect to supply the arbitrators with any demanded papers or information, the arbitrators shall proceed ex parte. The written decision of any two arbitrators shall be binding; shall not be open for objection as to award or form of proceedings except as otherwise provided by statute; and shall be filed in court if so required to carry it into effect. The arbitrators shall fix their own compensation and access the cost of arbitration upon either or both parties as the merits of the case demand. [emphasis added]

The court enjoined the Bodine demand for arbitration under the Collection Contract on the premise that they were not *on matters not governed by the contract documents* [that is, that the disputes involved construction of the contract documents] and so were expressly excepted from Arbitration Clause GC–8.

The contractor attempts the argument that no contractual language directs the conduct of the parties in any given situation—such as the claims for additional time and money to repair obstacles which directly interfere with construction, or the compensation for the repair and replacement of obstructions done by the directive of the engineer, or how to hold the engineer to the contract duty to set and correct construction stakes, among others. These, however, all amount to infractions of specific provisions of the Collection Contract [for instance, General Conditions 9(e), 9(j), 9(k), and 11(e) ] and *the breaches of these express provisions* are the very subject of the Demand for Arbitration served upon the owner Cairo and submitted to the American Arbitration Association for administration under the terms of Arbitration Clause C–8. The contentions these disputes pose are questions of performance under the contract terms, and so are arbitrable as such, but only if an agreement to arbitrate subsists, and if the particular disputes are encompassed within its scope.

There is no contention that an agreement to arbitrate does not exist as a separate undertaking between Bodine and Cairo. Section GC–8 of the Collection Contract, titled *Arbitration,* announces the assent of the subscribers to that method of dispute resolution. The function of an agreement to arbitrate—as the text of Federal Act, 9 U.S.C. § 2 declares is: "to settle by arbitration a controversy thereafter arising out of such contract or transaction." The Missouri Act § 435.350 declares a like purpose: to validate "a provision in a written contract [except contracts of insurance and contracts of adhesion] to submit to arbitration any controversy thereafter arising between the parties." The purpose of these statutes is to permit a speedy, efficient, and less costly alternative than court litigation to resolve contract disputes. *Prima Paint Corporation v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967); *Demers Nursing Home, Inc. v. R.C. Foss & Son, Inc.,* 122 N.H. 757, 449 A.2d 1231, 1233[3] (N.H.1982). Thus, the mutual promises to settle disputes are the quid pro quo for the arbitration agreement. 6A Corbin on Contracts § 1443, at 443 (1962); Restatement (Second) of Contracts § 71 (1979); *R.W. Roberts Construction Co. v. St. Johns River Water Management District,* 423 So.2d 630 (Fla.App.1982). The arbitration promise is itself a separate contract, and as such, the parties are free to define the scope of that promise. *Atkinson v. Sinclair Refining Company,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). The undertaking to arbitrate some specific thing, however constricted the scope, is of the very essence of a contract to arbitrate. 16 Williston on Contracts § 1919A (Third Edition, Jaeger, 1976). Thus, the very existence of a clause to compel arbitration—such as GC–8—attests to the purpose of the subscribers to

settle rather than litigate, at least as to some, contract disputes.

The Arbitration Clause GC–8 as written not only declares the purpose to arbitrate, but also defines the method of selection of the arbitrators, the time constraints for the exercise of the right, the conclusive effect and enforceability of the arbitration decision. These components of Clause GC–8 as constituted meet the methods approved by the Acts, both Federal [9 U.S.C. § 3] and Missouri [§§ 435.355, 435.365, 435.385 and 435.415] for selection of the arbitration panel, rendition and conclusiveness of the award. These components of GC–8 confirm the announced purpose and subject of the clause: *Arbitration.* Another component of the clause—the element on which the judgment to enjoin the demand for arbitration rests—however, contradicts that essential purpose: *Disputes on matters not governed by the contract documents* shall be arbitrated. In the context of a construction project, it is a rare dispute which does not involve some contract provision. Thus, since the essential purpose of the Acts is to resolve contract disputes in the arbitration forum rather than in the litigation forum, the *disputes on matters not governed by the contract documents* confines the arbitration process to an anomalous scope, one—once the agreement to arbitrate is found—compatible with neither the statutory imperatives nor with contract expectations.

 In a word, these disparate elements of Arbitration Clause GC–8 create uncertainty as to the scope of arbitration intended, and so render the contract ambiguous. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264[5–8] (Mo. banc 1973). The premise of the judgment—that the disputes under the Collection Contract "all involve interpretation of language in the contract documents, and are therefore not subject to arbitration"—in effect discounts any mutual promise by Cairo to arbitrate, and renders that undertaking altogether illusory. 16 Williston on Contracts § 1919A, 138 (Third Edition, Jaeger, 1976); *R.W. Roberts Construction Co.*

*v. St. Johns River Water Management District,* 423 So.2d 630 (Fla.App.1982). There is no contention, nor does the court adjudge, that no contract to arbitrate subsists. The question, therefore, is not that of validity of contract, but of ambiguity of contract.

 The effect the judgment attributes to the—*disputes on matters not governed by the contract documents* terminology removes from the arbitration forum all disputes under the Collection Contract and so renders Clause GC–8 virtually meaningless. The terms of a contract are read as a whole to come to the intention of the parties. In that exercise each term is construed to avoid an effect which renders other terms meaningless: a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense. *Harrison v. Union Electric Co.,* 622 S.W.2d 239, 247[6–8] (Mo.App.1981). In terms of a contract to arbitrate, the separate provisions are construed to give effect to that essential purpose of agreement. Thus, once the intention to arbitrate is established, doubt of the scope of the agreement is resolved in favor of arbitrability. *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa,* 713 F.2d 370, 375[6, 7] (8th Cir.1983); *Lanzo Construction Company v. City of Port Huron,* 88 Mich.App. 443, 276 N.W.2d 613, 616[4–6] (1979). This principle of contract interpretation is reinforced by the public policy of the Acts that "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 564, 582, 80 S.Ct. 1343, 1353, 4 L.Ed.2d 1403 (1960); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 320 A.2d 558, 570 (1974).

 A contract ambiguity is construed against the drafter. Village of Cairo, although not the actual author of either

Arbitration Clause GC–8 in the Collection Contract, expressly approved and adopted the entire contract documents and tendered them as its own to the bidders, and executed them as its own. There is no contention to the contrary. To aid a court to discern the intention of principals to an ambiguous contract [*Rouggly v. Whitman*, 592 S.W.2d 516, 519[6] (Mo.App.1979)], it is proper to consider:

> " 'the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances which cast light on the intent of the parties.' "

*Davis v. Chevy Chase Financial Limited*, 667 F.2d 160, 170[11, 12] (D.C.Cir.1981); *Shamokin Area School Authority v. Fairfield Company*, 308 Pa.Super. 271, 454 A.2d 126, 129[3] (1982).

■ The extrinsic circumstances show: The construction project entailed a unitary waste removal and treatment facility for the Village of Cairo. The project was designed into separate sections—the Interceptor System and the Collection System—and were bid as separate units and awarded as separate contracts, only because each was financed by a different federal agency. The General Conditions of each set of contract documents were the workmanship of each respective agency, hence the anomaly of a clause in one contract to arbitrate *all claims* of breach of contract documents, and a clause in the other to arbitrate *no claims* of breach of contract documents. The contracts, although executed as separate instruments [and on the same date] were performed, from all that appears, contemporaneously. The claims Bodine describes as separate breaches of the Interceptor Contract and Collection Contract in the formal Demand for Arbitration submitted to the American arbitration Association are, for the most part, identical: impairment of performance because of engineer error in the placement of stakes and ambiguous specifications; excused late performance because of unforeseeable causes such as unusually severe weather; the encounters with latent physical conditions materially different from those described in the contract documents, among others. It is likely that the proof of some of the disputes *under both contracts* will entail the same evidence. That practical reality is tacitly acknowledged by the Village of Cairo. The count for damages which pends against Bodine [and stayed by this appeal] pleads the breaches of both the Interceptor and Collection Contracts as a unitary cause of action and treats the performance under both as a single obligation: "Bodine failed to prosecute diligently the work required of it by the Collection Contract and the Interceptor Contract, failed and refused to pay when due charges for materials and supplies ordered by it for *incorporation in the projects* and delivered to the work site, failed and refused to employ sufficient workmen to properly and timely perform *the required contract work*, failed and refused to pay when due wages earned by laborers employed on the project in accordance with the contract documents, plans and specifications and to follow proper directions of the engineer and failed and refused to complete the work required by said *contracts* within 360 consecutive calendar days, etc." [emphasis added].

We have already determined the right of Bodine to arbitrate the claims in dispute under the Interceptor Contract. Thus, as to those contentions, the parties are given a forum more conversant with the day-to-day performance of such industrial contracts and more expert in its technical incidents than the usual court. *United Steelworkers of America v. American Manufacturing Company*, 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); also: *Prima Paint Corporation v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) [the astute analysis of the distinctive role of the arbitrator as expert in the dissent of Harlan, J., l.c. 415 et seq.]. Thus, also the parties—as to the claims under the Interceptor Contract—are

now not only in a forum adaptable to their needs, but also a speedy, inexpensive and efficient means of resolution of disputes under those contract documents. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, 94 S.Ct. 2449, 2452, 41 L.Ed.2d 270 (1974); *Crosby-Ironton Federation of Teachers Local 1325 v. Independent School District No. 182 Crosby-Ironton*, 285 N.W.2d 667 (Minn.1979). The trial court denies a like access for disputes under the Collection Contract—a contract which declares the purpose to arbitrate, but then casts doubt on the scope. We resolve that ambiguity against the proponent of the contract, Village of Cairo, and in favor of the arbitrability of the disputes under the Collection Contract—as described in the Demand for Arbitration. We do so, not only as prompted by the cogent public policy of the Arbitration Acts, but also because the full context of the transaction shows that once the bids were awarded to a single contractor, the work was undertaken, if not as a unitary performance, then a performance continuous, intermingled and undifferentiated as between the Interceptor Contract and the Collection Contract. Thus, the same act or omission of either principal may amount to a breach of *both* contracts. Thus, also, the same evidence bears as proof on both. The formulations of the Demand for Arbitration by Bodine and the damage Count II of the petition of Cairo demonstrate that.

In these distinctive circumstances, it would compound anomaly with anomaly to deny the disputes under the Collection Contract the arbitration forum. That would pose a risk of contradictory results between the administration of arbitration under the Interceptor Contract and the adjudication of suit under the Collection Contract—and on the same evidence. That course also courts that delay, undue expense and congestion of the judicial calendar public policy now so disprizes.

The order of the trial court to enjoin the Bodine Demand for Arbitration under the Collection Contract is set aside and the cause is remanded for arbitration in accordance with the agreement of the parties.

The order of the trial court to enjoin the Bodine Demand for Arbitration under the Interceptor Contract is set aside and the cause is remanded for arbitration in accordance with the agreement of the parties.

Accordingly, the claim for damages by the Village of Cairo against Bodine for breaches of the contracts, Count II of the petition, is stayed. [U.S.C. § 3; § 435.355.-4, RSMo 1980].

All concur.