**J.H. BERRA CONSTRUCTION CO., INC., Appellant,**

v.

**MISSOURI HIGHWAY & TRANS-PORTATION COMMISSION, Respondent.**

No. WD 56853.

Missouri Court of Appeals, Western District.

March 21, 2000.

Roy Bash, Esq., Richard M. Paul, II, David L. Welsh, Esq., Co-Council, St. Louis, for Appellant.

Michael C. Rose, Esq., Sr. Asst. Counsel, Robert M. Hibbs, Esq., Sr. Asst. Counsel, Rich Tiemeyer, Esq., Chief Counsel, Jefferson City, for Respondent.

Before: Chief Judge BRECKENRIDGE, Judge LOWENSTEIN and Judge ULRICH.

HAROLD L. LOWENSTEIN, Judge.

## FACTS

This is an appeal from a summary judgment in favor of the Missouri Highway and Transportation Commission (hereafter the "Commission") on an issue of contract interpretation. The contract in question was between the plaintiff-appellant, who was the successful bidder on a contract to do roadwork for the State of Missouri, and

the State of Missouri. In this suit, J.H. Berra Construction Co., Inc. ("Berra") sought damages for breach pursuant to the contract in the amount of $1,164,234 for work it did which was necessary to fulfill its contractual obligation, but which the Commission declined to pay.

Appellant, Berra submitted a bid to the Commission in response to the Commission's Request for Proposal soliciting bids to construct part of Route M in Jefferson City, Missouri (the "Project"). The proposal showed the location, character and details of the work, as well as an "Itemized Proposal" purporting to list a description of all the work necessary to complete the Project and the quantity of that work called for in the plans.

As required, Berra bid on the project by placing a "unit price" next to each separately described item of work listed in the Itemized Proposal. The Commission thereafter awarded the contract to Berra, who in turn began construction and completed the Project.

A portion of the work on the Project involved hauling dirt. The Missouri Standard Specifications for Highway Construction 1993 Edition ("Standard Specifications") is the controlling authority of the issue in this case and was incorporated into the contract. The Standard Specifications state that all hauling within 2,000 feet is known as "free-haul" and not included as a "pay item," while hauling that exceeds 2,000 feet is known as "overhaul." The Standard Specifications define "pay item" as "[an] item of work specifically described and for which a price, either unit or lump sum, is provided." The Commission is to include overhaul as a pay item and quantify overhaul in the plans if it intends to invite a bid for that work also, according to the Standard Specifications.

As a design decision, the Missouri Department of Transportation chose not to include overhaul as a separate pay item on the Project. The quantities prepared by the Commission and included within the Itemized Proposal did not contain quanti-ties for overhaul. Nowhere in the bidding documents was hauling beyond the free-haul distance quantified.

However, the Project as designed did require overhaul that had not been calculated by the Commission. The costs associated with this overhaul is Berra's claim on appeal.

Berra claims that overhaul distances allowed "determination" of a quantity, although it admits the quantity was stated nowhere in the contract. Berra further claims that absent a note stating otherwise, there should be separate payment of overhaul as a contract obligation pursuant to the Standard Specifications.

After making a claim in the amount of $494,040 for the overhaul that Berra performed in the course of the project, the Missouri Department of Transportation's Claims Committee determined that Berra's claim should be denied. Berra subsequently brought this suit in Circuit Court seeking compensation in the amount of $1,164,234: the amount of the previous claim plus additional overhaul it had performed. Both the Claims Committee and the Circuit Court held that Berra's interpretation of the contract was incorrect and denied Berra any relief.

Although there was no way for Berra to quantify the overhaul or even prove there would be any at the time of the bid, Berra claims it ultimately provided 16,468,000 station yards of overhaul in completing the Project. Berra hired personnel capable of making the overhaul calculations, and after doing so, requested payment for the overhaul it had already performed. The Commission's response to Berra was that Berra had no basis to be paid for the overhaul since it was not quantified in the plans.

## STANDARD OF REVIEW

Appellant's claim was decided on summary judgment. Accordingly, the applicable standard of review is as follows:

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*Rodgers v. Threlkeld,* WD 56759, 1999 WL 807627 (Mo.App.W.D. 1999) citing *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. *Id.* at 376. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences. *Id.*

**POINT RELIED ON**

Appellant contends that the trial court erred in entering summary judgment in favor of the Commission because it was not entitled to judgment as a matter of law as the contract obligates the Commission to compensate Berra for authorized hauling in excess of the free-haul distance.

 This case is fundamentally governed by the primary purpose of contract interpretation; to ascertain the intent of the parties and to give effect to that intent. *CB Commercial Real Estate Group, Inc. v.*

*Equity Partnerships Corp.,* 917 S.W.2d 641, 646 (Mo.App.1996). "The terms of a contract are read as a whole to come to the intention of the parties." *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 264 (Mo.App.1985). "[E]ach term is construed to avoid an effect which renders other terms meaningless: a construction which attributes a reasonable meaning to all the provisions of the agreement is preferred to one which leaves some of them without function or sense." *Id.* When several documents make up the agreement between the parties, "the parties' intent and the meaning of those documents must be determined from the entire transaction and not simply from isolated portions of particular documents." *Norcomo Corp. v. Franchi Constr. Co.,* 587 S.W.2d 311, 317 (Mo.App.1979).

 Further, "[w]hen the language is unambiguous, the intent of the parties is reflected within the language of the contract and the court will determine the parties' intent from the four corners of the document itself." *CB Commercial Real Estate Group, Inc.,* 917 S.W.2d at 646. "An ambiguity in a contract arises only from the terms susceptible to fair and honest differences, not mere disagreements as to construction. A determination of whether a contract is ambiguous is a question of law to be decided by the court." *Id.*

 "[S]ummary judgment is proper when the meaning of that portion of the contract in issue is so clear that it may be determined from the four corners of the contract." *Burns v. Black & Veatch Architects, Inc.,* 854 S.W.2d 450, 452 (Mo. App.1993). Summary judgment is appropriate when the contract is clear and unambiguous in its construction. *Maryland Cas. Co. v. Martinez,* 812 S.W.2d 876, 880 (Mo.App.1991).

The trial judge found no contract ambiguity, nor does Berra set forth any in its brief. The trial court also held that because the overhaul on the Project was not

computed, the plans did not show overhaul quantities. Section 205.1.1 of the Standard Specifications reads as follows:

> If the plans show no overhaul quantities or note that overhaul will not be paid for as a separate item, then no direct payment will be made for such work.

 Accordingly, or is the key word in the interpretation confusion. The Standard Specifications state if the plans either show no overhaul quantities or note that overhaul will not be paid as a separate item, then no direct payment will be made for such work.

Berra's interpretation of this section assumes the disjunctive and is used rather than the disjunctive or, which actually is used. The quantities prepared by the Commission did not contain any quantities for overhaul. It is also undisputed that the Commission did not attach a note to any of the documents stating that overhaul would not be paid. However, because the plans showed no overhaul quantities, the first prong of Section 205.1.1 alone disproves Berra's claim that the Commission owed them for the overhaul amounts they claimed subsequent to completing the Project. Thus, the Commission and the Trial Court properly held that Berra interpreted the contract incorrectly.

The guidelines for acceptance of a contract are set out in several places throughout both the Standard Specifications and the contract itself. In Berra's own proposal, Berra offered the following:

> *COMPLIANCE WITH CONTRACT PROVISIONS*: The bidder, having examined and being familiar with the local conditions affecting the work, and with the contract, documents, including the "Missouri Highway and Transportation Commission's Standard Specifications for Highway Construction, 1993," its revisions, and the request for proposal, including appendices, the special provisions and plans, *hereby proposes to furnish all labor, materials, equipment, services, etc., required for the performance and completion of the work.*

Further, after the contract was awarded to Berra, Berra executed the Contract Agreement which included:

> The Contractor at its own expense hereby agrees to do or furnish all labor, materials and equipment called for in the proposal designated and marked.... The contractor fully agrees that it is fully informed regarding all conditions affecting the work to be done, and labor and materials to be furnished for the completion of this contract, and that its information was secured by personal investigation and research and not from any estimates of the Commission; and that it will make no claim against the State or Commission by reason of estimates, tests, or representation of any officer, agent, or employees of the Commission.

Further yet, Section 109.2 of the Standard Specifications states the following:

> 109.2 Scope of Payment
>
> The contractor shall receive and accept compensation provided for in the contract as full payment for furnishing all materials and for performing all work under the contract in a complete and acceptable manner and for all risk, loss, damage, or expense of whatever character arising out of the nature of the work or the prosecution thereof.

This court agrees with the trial court's judgment that the Standard Specifications themselves told Berra what to do with the cost of overhauling that was required by the contract, but was not quantified. The following sections address unclassified excavation and preclude payment for overhaul because the unit price for unclassified excavation includes hauling.

> Section 203.7 Basis of Payment.
>
> Payment for roadway and drainage excavation will be made at the contract unit price per cubic yard which price shall be full compensation for the excavating and hauling....
>
> Section 203.7.7

Payment will be made at the unit price for each of the pay items included in the contract.

These two sections clearly state that the unit price for excavation includes hauling. They further state that payment for the cost of excavation and related work will be covered by the pay items which the Commission chose to include in its Itemized Proposal. Both sides concede that overhaul was no where included or quantified as a pay item.

Moreover, the testimony of two other companies who bid on the same project showed that neither of those companies experienced confusion similar to Berra. They both realized, although overhaul was not included as a pay item, it would be necessary to perform the work, and therefore calculated their bids accordingly.

■ Although Berra claims that it should have been issued a change order to compensate for the overhaul it performed, the definition of change order does not match this theory. Change order is defined in the Standard Specifications as "a written order from the engineer to the contractor, as authorized by the contract, directing changes in the work as made necessary or desirable by *unforeseen* conditions or events discovered or occurring during the progress of the work." This definition in itself contradicts Berra's argument, in that Anthony Berra testified he was aware of the overhaul needed when he was preparing the bid. The contract provisions above clearly indicate that Berra was responsible for any such occurrences. To allow for such recovery would be making additions to the contract which clearly were not intended by the Missouri Department of Transportation.

The record reflects that Anthony Berra participated in the preparation of Berra's bid and, after reviewing the plans, determined overhaul would be necessary to perform and complete the job. The record also reflects he was aware that overhaul was not included in the proposal as a pay item, nor were there any notes regarding overhaul on the plans. Berra admitted that he did not include any costs of overhaul in the bid because Berra's vice president had informed him that overhauls would be considered a change order.

As a result, Berra asserts that it left out any consideration for the cost of overhaul when it made its bid, yet was aware that there was overhaul involved that was necessary to do the Project. Berra did not seek clarification from the Commission regarding whether overhaul would be a separate pay item. Section 105.4.1 states:

The contractor shall take no advantage of any apparent error or omission in the plans or specifications. If the contractor discovers such an error or omission, he shall immediately notify the engineer. The engineer will then make such corrections and interpretations as may be deemed necessary for fulfilling the intent of the plans and specifications.

■ Pursuant to this section, Berra had a duty prior to submitting its bid to inquire of the engineer whether overhaul was to be separately bid or paid under the contract. As stated, the record reflects that Berra was aware that there was necessary overhaul that was not listed as a pay item, and yet did not inquire to the engineer. Instead, Berra submitted its bid assuming they would get a change order and recover the cost for the overhaul. Consequently, Berra did not quantify overhaul and request payment from the Commission until after it began work on the Project.

Caselaw has held that this type of policy, known as the patent ambiguity doctrine, "was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact." *Community Heating & Plumbing Co., Inc. v. Kelso,* 987 F.2d 1575, 1580 (Fed.Cir.1993) citing *Newsom v. United*

*States,* 230 Ct.Cl. 301, 676 F.2d 647, 649 (1982). Although Appellant argues that the Standard Specifications' choice of the word "contractors" in Section 105.4.1 precludes bidders from having to inquire about any defects before they bid as they are not yet "contractors," the *Community Heating* case makes it clear that such language does in fact apply to contractors when they are bidders prior to being awarded the contract. *See id.*

 Appellant also contends that a January 1, 1999, amendment to Section 205.1.1 of the Standard Specifications reflects that the Commission has acknowledged their previous misinterpretation of the section by changing the wording to indicate no direct payment if there is no pay item, even if the plans show overhaul.[1] The only caselaw Appellant cited to support this argument, *Atkinson v. Timothy Peterson/T & P Foundation,* 962 S.W.2d 912, 916 (Mo.App.1998), is in relation to amendments to statutes, not contracts. The 1999 amendment was not part of the original contract, and therefore, is not applicable. This argument is without merit.

Appellant alternatively argues that the trial court's ruling that Article III, § 39(3) and (4) of the Missouri Constitution prohibit the Commission from paying additional compensation outside the terms of a lawful public contract. This argument is also without merit due to the affirmation of the trial court's ruling that although the overhauling was not quantified as a pay item nor was a bid invited for the overhaul, it was still within the terms of the contract in that Berra knew overhauling was necessary to complete the Project according to the plans.

Berra agreed under Section 109.2.1 of the Standard Specifications to receive the compensation stated in the contract as full payment for the Project. Therefore, Berra is barred from receiving extra payment for the work that it knew was necessary to complete the Project under the original

contract. This point is further supported by *Spitcaufsky v. State Highway Commission of Missouri,* 159 S.W.2d 647, 654 (Mo. 1942), holding that if the disputed claims are within the contract, recovery is barred.

### CONCLUSION

 Given the documentation in the Standard Specifications and the contract, this court must agree with the trial court in holding that the contract was not ambiguous, and therefore, the "court will determine the intent from the four corners of the document itself." *CB Commercial Real Estate Group, Inc.,* 917 S.W.2d at 646. The Specifications state that if the plans show no overhaul quantities *or* note that it will not be paid for as a separate item, then no direct payment will be made for such work. There were *no* overhaul quantities shown in the plans, therefore, the Commission's refusal to pay did not result in a breach of contract.

This court holds that Summary Judgment was properly granted in the Commission's favor. The judgment of the trial court is affirmed.

All concur.

---

1. The 1999 version reads, "the contract documents show no pay item for overhaul, then no direct payment will be made for such work, even if the plans show hauling beyond the freehaul distance."