STATE of Missouri ex rel. James S. McCLELLAN et al., Relators,

v.

James C. KIRKPATRICK as Secretary of State of the State of Missouri, Respondent,

Paul Berra and others, Constituting the Democratic Central Committee for the City of St. Louis, Intervenors-Respondents.

No. 58438.

Supreme Court of Missouri, En Banc.

Jan. 14, 1974.

Jack L. Koehr, City Counselor, City of St. Louis, David S. Hemenway, St. Louis, for relators.

John C. Danforth, Atty. Gen., John C. Klaffenbach, C. B. Burns, Jr., Attys. Gen., Jefferson City, for respondent James C. Kirkpatrick, Secretary of State of Missouri.

Hearnes, Padberg Raack, McSweeney & Slater, St. Louis, for intervenor-respondents, by Godfrey P. Padberg, St. Louis.

BARDGETT, Judge.

This is an original mandamus action filed in this court by relators, the Board of Election Commissioners of the City of St. Louis, against respondent, Secretary of State of the State of Missouri, in which relators seek an order of this court directing respondent Secretary of State to certify the results of the balloting by voters using voting machines in the City of St. Louis at the next statewide primary election. Respondent has declared that he will not certify the results of such balloting if the relators permit primary election voters to vote without first making known the voters' choice of primary ballots to the judges of election. This declaration by respondent resulted from the announcement by the relators that they are going to equip voting machines in the City of St. Louis with a device located within the booth itself whereby the voter will make his primary ballot selection privately and without disclosing such choice to the judges of election. Relators intend to install the device on some 900 voting machines in St. Louis and use them at the primary election

to be held in August of 1974. The installation will cost approximately $160,000 and, if it is to be done, work would have to begin promptly in order for the machines to be ready for the primary election in August of 1974.

This court has jurisdiction, in its discretion, to issue and determine original remedial writs. Mo.Const., Art. V, Sec. 4(1), V.A.M.S.

The issues here are of vital importance to the electorate of the City of St. Louis and to the State of Missouri as a whole for if relators carry out their plan in accordance with their announcement and thereafter it is determined that a violation of the election laws occurred, the result could be the voiding of several hundred thousand ballots and perhaps the complete disruption of a statewide primary election. It was for these reasons that the court preliminarily sustained relators' petition for writ of mandamus, ordered an accelerated briefing schedule, heard arguments in the case on October 19, 1973, and will now decide the questions presented.[1]

Relators have the duty of conducting elections in the City of St. Louis and utilize about 900 voting machines in the conduct of a primary election. The face of each voting machine contains the primary ballot of each participating political party and other ballots such as the independent ballot. There is a locking device on the outside of each machine which is utilized to open the face of the machine to whichever ballot the voter states it is his desire to vote and which prevents the voter from voting any other ballot. The voter tells a judge of election which ballot he desires and the judge of election then activates the locking device so as to provide the voter with the ballot the voter has selected.

These voting machines can be fitted with a ballot selection device which would be located on the face of the machine and would be operated by the voter in the privacy of the booth, allowing the voter to select a ballot privately. It would thereby make it unnecessary for the voter to advise the election judge which ballot the voter desires to vote. Relators intend to install such a device on the voting machines in the City of St. Louis and intend not to require the voter to make his ballot selection known to the election judge nor to require that the election judge deliver to the voter the ballot selected by the voter.

Respondent Secretary of State's position is that the Missouri primary election laws require the judges of election to deliver the ballot selected by the voter to the voter and consequently require the voter to make his ballot choice known to the judges of election and unless the election is so conducted the Secretary of State will not certify the results thereof. On motion, the Democratic Central Committee for the City of St. Louis was permitted to intervene as respondents and take the same position as the Secretary of State.

Relators' first point is that a statutory requirement that a voter at a primary election must announce the ballot which he intends to vote contravenes the Missouri constitutional provisions that elections be free and open and that qualified citizens shall have the right to vote therein. Mo. Const., Art. I, Sec. 25, and Art. VIII, Sec. 2, V.A.M.S. Relators' second point is that even if such a requirement were constitutional the law of Missouri does not prohibit election officials from adjusting the voting machines so as to make such an announcement unnecessary.

Relators' second point will be considered first, for if the law of Missouri does not require the voter to state his ballot choice to election officials, the constitutional question need not be reached.

1. The writer entertains substantial doubt as to the advisability of this court entertaining this matter as an original writ rather than on appeal from circuit court; but since the court voted to issue the preliminary writ and the cause has been briefed and argued here, the writer believes the court should decide the case on the merits.

The question therefore is: Do the laws of Missouri require the voter to state to the election judges which primary ballot he desires to vote?

■ Nominating or primary elections have constitutional stature in Missouri, Mo.Const., Art. VIII, Sec. 3, V.A.M.S. and are subject to regulation by the General Assembly under the police power of the state. Totton v. Murdock, 482 S.W.2d 65 (Mo.banc 1972). Political parties play a vital and necessary role in national, state-wide, and local elections and are recognized by the laws of this state which give the parties certain statutory rights, powers, and duties with respect to primary and general elections. Chapter 120, RSMo 1969, V.A.M.S. Primary elections are an integral part of the election machinery and constitute the method whereby a political party can nominate a candidate for public office. Sec. 120.150, RSMo 1969, V.A.M.S.; see the exceptions provided for in Secs. 120.300, 120.550, and 120.560, RSMo 1969, V.A.M.S., none of which apply to the question at hand. Pursuant to Chapter 121, RSMo 1969, voting machines have been adopted for use in St. Louis. Sec. 121.260(1) provides in part that "the provisions of all state laws relating to elections . . . not inconsistent with this chapter shall apply to all elections in districts or precincts where voting machines are used."

The primary election laws are generally found in Chapter 120, RSMo 1969, V.A.M.S. Sec. 120.450(1) requires in part that "At all primary elections there shall be as many *separate* ballots as there are parties entitled to participate in the primary election. There shall also be a non-partisan ballot . . . ." (emphasis added)

Sec. 120.450(7) provides: "In any primary election each qualified voter shall be entitled to receive from the judge of the election one ballot of the political party participating in the election for which he desires to vote. The judges of election shall deliver the ballot to the voters. Be-fore delivering any ballot to the voter, the two judges of election having charge of the ballot shall write their names or initials upon the back of the ballot with indelible pencil, and no other writing shall be on the back of the ballot except as provided by law."

Voter qualifications are presently set forth in Sec. 120.460, RSMo 1969, V.A.M.S. which provides "No person shall be entitled to vote at any primary election unless he is a qualified voter of the precinct and duly registered therein, if registration is required by law." Prior to the 1969 amendment, this section provided as follows (the italicized portion appearing below was amended out of the statute in 1969):

"No person shall be entitled to vote at any primary unless a qualified elector of the precinct and duly registered therein, if registration thereat be required by law, *and known to affiliate with the political party named at the head of the ticket he calls for and attempts to vote, or obligates himself to support the nominees of said party at the following general election.*"

Sec. 120.470, RSMo 1959, V.A.M.S., was repealed in 1969 (Laws of Mo.1969, p. 238). Prior to repeal this section provided: "It shall be the duty of the challenger to challenge and the duty of the judges of election to reject the ballot of any person attempting to vote other than the ticket of the party with which he is known to be affiliated, unless such person, when challenged, obligates himself, by oath or affirmation administered by one of the judges, to support the party nominees of the ticket he is voting in the following general election. All judges of the election shall have authority and are empowered to administer such oath or affirmation, and any person offering to vote who shall fail or refuse to take or make such oath or affirmation when demanded by such challenger, or required by any judge, shall not be allowed to vote at such primary election."

It is relators' contention that the 1969 amendment to Sec. 120.460 and the repeal of Sec. 120.470 had the effect of removing from the law any requirement that a voter in a primary election state his ballot preference to a judge of election unless such declaration be necessary in order to provide the voter with a particular ballot, as in the case where paper ballots are used.

Sec. 121.260, RSMo 1969, V.A.M.S., supra, makes all provisions of state laws relating to elections applicable to areas where voting machines are used except those laws inconsistent with the provisions of chapter 121 (Voting Machines).

The provisions of Sec. 120.450(7), RSMo 1969, V.A.M.S., require that the voter *receive from the judge of the election* the ballot desired by the voter and it further requires that the *judge of election deliver* such ballot to the voter. Where voting machines are used, this duty is performed by a judge of election when he operates the locking device in accordance with the voter's preference so as to permit the voter to vote the primary ballot the voter prefers. It is obvious that the other provision of Sec. 120.450(7) requiring the two judges of election to initial the back of the ballot cannot be performed when voting machines are used; this provision is therefore inconsistent with chapter 121 and consequently not applicable where voting machines are used.

The provision of Sec. 120.450(7) which requires the judge of election to deliver the ballot selected by the voter to the voter is not inconsistent with chapter 121 and therefore is applicable to places where voting machines are used. The court recognizes that the performance of this duty by the election judges requires the voter to make his ballot preference known to the judges of election. The 75th General Assembly was equally aware of this fact when it decided to retain this provision in the law in 1969 as part of Senate Bill 135 which bill also contained the provision repealing the requirements that the voter be affiliated with a political party or that he take an oath to support the nominees of the party appearing on the primary ballot he selects.

Relators contend however that the provision of Sec. 120.450(7) would be satisfied if the judges of election delivered to the voter one sheet of paper upon which was printed the ballots of all parties participating in the primary election with instructions to vote only one ballot. If this contention is correct, then election officials in places where paper ballots are used in the general balloting could print all primary ballots on one sheet of paper and give the primary voter that paper. The voter then would privately select the ticket of the party in whose primary he desired to participate and vote that ballot. If the Missouri primary election laws permitted the foregoing practice where paper ballots are used, then it follows that the proposal of relators with respect to voting machines would be valid. This contention however must be rejected.

Sec. 120.450(1), RSMo 1969, V.A.M.S., requires that there be as many *separate ballots* as there are parties participating in the primary election. Sec. 120.450(7) entitles the voter to receive from the election judge *one* ballot of *the* political party participating in the election for which he desires to vote. Had the General Assembly intended that all of the ballots could be printed upon one sheet of paper and delivered to the voter, it would have so provided as it did in the case of war ballots. Sec. 112.330, RSMo 1969, V.A.M.S. Further evidencing the fact that such was not the legislative intent is the language of Sec. 112.330(1) with respect to war ballots, as follows: "The form and contents of the ballot shall comply with the primary and general election laws, except as to the instructions required to be placed on primary and general election ballots, and except that the ballot for primary elections for all parties shall consist of *a single sheet of paper* and shall be in substantially the following form . . . ." (emphasis added)

The foregoing language clearly shows that the printing and delivery to the voter of one sheet of paper containing all primary election ballots was recognized by the General Assembly as an exception to the requirements of Sec. 120.450, supra. No such exception appears with respect to voting machines.

Sec. 120.450 requires the ballots of each party to be printed separately and that only the ballot requested by the voter is to be delivered to him.

Sec. 120.450(7) requires that the election judge deliver the ballot to the voter. This requirement is applicable to elections conducted by relators with the use of voting machines. The performance of this duty by election judges necessitates the voter making his primary ballot preference known to the judges of election. The law does not except those who are voting in elections conducted by relators with the use of voting machines from making their ballot choice known to the judges of election.

Relators contend that the requirement that a voter tell the judges of election which primary ballot he desires contravenes Art. I, Sec. 25, and Art. VIII, Sec. 2, Mo.Const.1945, V.A.M.S.

Art. I, Sec. 25, and Art. VIII, Sec. 2, V.A.M.S., provide, inter alia, that all elections shall be free and open; that no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage; and that all persons who possess the prescribed qualifications as to age and residence, and who are not within certain specific disqualified classes, shall be entitled to vote at all elections by the people.

Relators argue that a requirement that a voter at a primary election announce his ballot preference constitutes a qualification for voting not contained in the Constitution of Missouri and therefore conflicts with Art. I, Sec. 25, and Art. VIII, Sec. 2, V.A.M.S., supra.

In Nance v. Kearbey, 251 Mo. 374, 158 S.W. 629 (banc 1913), this court held that the right to vote is a constitutional right in those citizens possessed of the enumerated constitutional qualifications and that it may be regulated by statute although not lightly denied or abrogated. Totton v. Murdock, 482 S.W.2d 65 (Mo.banc 1972), held that primaries are constitutional elections but that the regulation of primary elections is within the police power of the state.

■ The preservation of the integrity of the electoral process is a legitimate and valid state goal. Rosario v. Rockefeller, 410 U.S. 752, 761, 93 S.Ct. 1245, 36 L.Ed. 2d 1 (1973). In *Rosario* the United States Supreme Court held that a New York primary election law that required a primary election voter to enroll in a political party of his choice 30 days before the general election in November in order to vote in the next subsequent primary election did not violate a citizen's First and Fourteenth Amendment right of free association with the political party of his choice nor did such requirement constitute an onerous burden on the voter's right to vote.

In Pontikes v. Kusper, 345 F.Supp. 1104, 1109 (N.D.Ill.1972), a statutory three-judge federal court held that an Illinois statute which required the primary election voter to declare his party affiliation prior to voting did not unduly burden the voter's right of privacy or his right to vote. Kusper appealed the case to the United States Supreme Court, Kusper v. Pontikes, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). The United States Supreme Court's opinion does not deal with the point noted above but does affirm the judgment of the three-judge court which, in part, held another section of the Illinois Election Code unconstitutional while upholding the validity of the law requiring the primary voter to declare his party affiliation.

The General Assembly of Missouri has seen fit to require that an election official deliver to the voter the primary ballot se-

lected by the voter. The performance of this duty requires that the voter's selection be made known to the election judge. Relators cite no cases nor has independent research revealed any cases where the requirement that a primary election voter make known his choice of ballots to an election official has been held to constitute an impermissible burden on the right to vote. *Rosario,* supra, and *Pontikes,* supra, are noteworthy on this issue because in both cases there existed the requirement that a primary election voter make known his primary election ballot preference and in both cases this requirement was held to be valid.

Relators contend that there no longer exists any reason to require the primary voter to state his ballot preference because the General Assembly has repealed Sec. 120.470, RSMo 1959, V.A.M.S., and that part of Sec. 120.460, RSMo 1959, V.A.M.S., which permitted a primary election voter's right to vote a particular party ballot to be challenged on the ground that he was not a member of the political party whose ballot he sought to vote unless he obligated himself to support the nominees of the party in whose primary the voter sought to participate. The requirement that an election official deliver the primary ballot to the voter may have been considered by the legislature to be a mild inhibiter to crossover primary "raiding", which is a legitimate state interest, as per *Rosario,* or to help prevent election fraud in some other respect, *Pontikes,* 345 F.Supp. at 1109, or to be a regulation that would be conducive to orderly elections. The spectrum of possible reasons behind this requirement is wide-ranging. However, identifying the exact rationale is not of decisive importance in this case. The legislature has the right and duty to make laws regulating the conduct of elections. These legal regulations must be enforced unless their application offends against the constitutional rights of the people to exercise their right to vote. The requirement that a primary voter receive the ballot he se-

lects from an election official which necessarily requires the voter to make his ballot preference known to the election official is not an additional qualification for voting. Rather it is a procedure that is deemed appropriate to uniform and orderly elections where balloting is done at numerous polling places on election day throughout this state. The court holds that a requirement that a primary election voter make his ballot choice known to the judges of election in order that the judges of election can deliver the ballot to the voter is not an unreasonable burden, if a burden at all, on the right to vote and does not violate the provisions of Art. I, Sec. 25, or Art. VIII, Sec. 2, V.A.M.S., of the Constitution of Missouri 1945, and is applicable to elections conducted by relators.

Relators' petition for writ of mandamus is denied.

DONNELLY, C. J., and MORGAN, HOLMAN and FINCH, JJ., concur.

SEILER, J., dissents and would grant the writ.

HENLEY, J., dissents in separate dissenting opinion filed.

HENLEY, Judge (dissenting).

As I understand the pleadings, and the issues made by those pleadings, relators seek to have determined, and the court has determined statutory and constitutional rights and responsibilities of persons not parties to the action: the qualified voters of the city of St. Louis and other cities and counties which use voting machines. Those rights and responsibilities are: (1) whether the statutes of this state now require that the voter at a primary election where voting machines are used announce to the election judges the ballot he intends to vote; and, if so, (2) whether those stat-

utes are unconstitutional as (a) contravening his right to a "free and open" election (Art. I, § 25); and (b) his right to vote at such an election (Art. VIII, § 2). This action was not brought by the qualified voters or by anyone in their behalf. This is an action by relators in their representative capacity as members of the Board of Election Commissioners, not one by them in their individual capacity as qualified voters; nor is it a class action by them as members of that class. Nor are these necessary parties, the qualified voters, made parties defendant. Notwithstanding this, the court is asked to, and has, decided their rights and responsibilities. I cannot concur in action which has, from beginning to end, so blithely ignored them and their right to be heard.

Their absence points up what to me is a fatal weakness in a part of relators' case. They attack, and the court has ruled upon, the constitutionality of the statute which the court says requires the voter at a primary election to announce to the election judges the type of ballot (party or nonpartisan) he proposes to vote. I do not disagree with the answer the court has given. I simply do not agree that the question answered is properly before us. This, because the only parties who raise this constitutional question, the relators, do not have standing to present this issue since, as Election Commissioners, they have no constitutional rights that have been or will be directly affected. State ex rel. Toliver v. Board of Education of City of St. Louis, 360 Mo. 671, 230 S.W.2d 724, 730 [8] (1950); State ex rel. Brown v. McIntosh et al., 205 Mo. 616, 103 S.W. 1071, 1081–1082 (1907).

For the above reasons, I respectfully dissent. And, it is for these and other reasons, I would not have issued the alternative writ in the first place and would now quash the writ as improvidently granted.