STATE of Missouri, ex rel. James C. KIRKPATRICK, Plaintiff-Respondent,

v.

The BOARD OF ELECTION COMMISSIONERS OF ST. LOUIS COUNTY, Missouri, Defendant-Appellant,

and

John Fox Arnold and Al Bauer, Defendants-Intervenors-Appellants.

No. WD36153.

Missouri Court of Appeals, Western District.

Feb. 26, 1985.

Curtis, Bamburg & Crossen by Kenneth M. Romines, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, Bruce Farmer, Asst. Atty. Gen., for plaintiff-respondent.

Before PRITCHARD, J., P., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Secretary of State Kirkpatrick as plaintiff filed a suit in declaratory judgment and for injunction. The individual defendants

intervened and all parties filed motions for summary judgment. The court sustained the Secretary's motion, and the Board and Intervenors appeal.

The issue is whether the Secretary may require by regulation, and in turn the court by its decree, that a ballot label and ballot card contain only the names of candidates of one political party and further require that polling booths be identified by party label in primary elections.

■ At the threshold of this appeal is an issue of mootness. The suit was filed prior to the 1984 primary election and as to the 1984 primary, the issues are moot. The issues may recur in other elections in St. Louis County and may arise in other areas of the state. In view of the continuing viability of the issues, the case will be determined despite the mootness of the issue as to the particular election. *State ex rel. Donnell v. Searcy*, 347 Mo. 1052, 1059, 152 S.W.2d 8, 10 (banc 1941); *State ex rel. Hooker v. City of St. Charles*, 668 S.W.2d 641, 643 (Mo.App.1984); *State ex rel. Southwestern Bell Telephone Co. v. Public Service Comm'n of Missouri*, 645 S.W.2d 44, 51 (Mo.App.1982).

The dispute arises from the mechanisms utilized by the Board in the conduct of primary elections. The papers and the paraphernalia utilized in the primary election process have been filed as an exhibit in this court. When the voter presents himself or herself to the election judges and is identified as an eligible voter, the procedure requires that the voter identify the ballot for the primary election in which the vote is to be cast. The voter may choose the Democratic, Republican ballot, or where such ballots are available, the ballot of the independent or other recognized party participating in the primary election. When the voter has made the selection, the judges of the election deliver to the voter a "ballot

card." This ballot card is color coded to indicate the party affiliation but otherwise contains no meaningful information. It contains only rows of numbers, each of which is positioned upon a round, partly-punched section of the card. Under the procedures here in question, the voter then repairs to any of the voting booths and is confronted with a plasticized booklet denominated the "ballot label." The voter is instructed to place the ballot card in a slot provided under the "ballot label." Alignment of the card is accomplished by inserting the upper end of the "ballot card" over posts affixed to the device. The booklet that is the "ballot label" is affixed to the device so that it is positioned above the ballot card in alignment with the "ballot card." The pages of the "ballot label" contain the names of the candidates for each office on a separate page. In the instance of the disputed procedures, this "ballot label" contains in sections the names of the candidates for *each party* participating in the election.[1]

The voter accomplishes his or her voting selection by turning to the appropriate page for the office to be voted and inserting a small stylus in the hole provided in the "ballot label" beside the chosen candidate's name. This causes the stylus to complete the punch out of a "hole" and number in the "ballot card." The voter, after completion of the voting, removes the "ballot card" and places it in a folder provided. Protruding from the folder is an identifying "tag." This "tag" is perforated to permit its removal by the election official in charge of the ballot box, the "tag" is retained as part of the election records. The "tag" is the same color as the "ballot card." The vote is tabulated by inserting the remaining portion of the "ballot cards" in a device that "counts" a vote for each perforation appearing in the "ballot card." Each perforation is designated for a specif-

---

1. The ballot label also contains, as appropriate for the election precinct, all propositions, such as constitutional amendments, referenda or initiatives, as well as any local issues presented. Provision is made to permit a voter to obtain a card that permits voting upon these issues alone and avoid participation in any primary election. These procedures are not at issue in this case.

ic candidate, and no other. The dispute in the instant case centers upon the universal character of the "ballot label" containing the names of the candidates of all parties in the primary election. There is no question but what a voter may roam over the whole field of candidates in all of the parties and punch a hole beside the names of candidates in the same race in different parties. Also, the process permits the voter to vote in different party primaries for different candidates. The stipulation of facts is less than explicit as to the effect of such actions by voters. The stipulation in relevant part states:

> 20. The system in St. Louis County, Missouri, at primary elections, *is set to reject the vote, except write-in votes, for any office and on any question when the number of votes exceeds the number of votes a voter is lawfully entitled to cast.*

> .　　.　　.　　.　　.

> 23. The system in St. Louis County, Missouri, at primary elections, uses automatic tabulating equipment that will reject each ballot on which a voter has voted for candidates of more than one party, *by not counting a vote punched in punch positions other than the party designated by the voter* in advance to an election judge.

(Emphasis added.)

From that stipulation and the response to the court's inquiries during the oral argument, it appears that the mechanical counting device excludes *only* the vote for the candidate of a party different than the ballot card utilized. If the voter has made multiple choices for the same office, the choice for the office, appropriate to the ballot card used, will be counted and only the choice for candidate of the other party will be rejected. If the voter has made choices for different offices in different primaries, only the votes in the primary selected by the voter will be counted.

The Secretary filed a petition in the Cole County Circuit Court for declaratory judg-

ment and a permanent injunction. He asked that the Board be required to label the polling booths by political party affiliation and that separate ballot labels be provided, each containing the names of only one political party, otherwise he would not certify the St. Louis County August 1984 primary election results, asserting they would be in contravention of Chapter 115 RSMo 1978. John Arnold and Al Bauer, voters in St. Louis County and members of the Board, then asked and were granted permission to enter the suit as defendants-intervenors, alleging the result of sustaining Kirkpatrick's argument would be to destroy the constitutionally and statutorily mandated secrecy of their vote. After entering into the stipulation of fact, the parties filed cross-motions for summary judgment. On July 13, Judge Kinder sustained the Secretary's motion and entered an order for declaratory judgment and permanent injunction, requiring that the Board provide separate voting devices for each political party or ticket offering candidates at the primary election and that voters be supplied with a ballot label containing the names of only those candidates of the political party the voter had previously designated. On July 27, the Board and defendants-intervenors' petitions for a writ of prohibition or a stay of injunction, filed in both this court and the Supreme Court, were denied. The Board and intervenors have appealed from the judgment of the circuit court.

The manner in which the joint brief of appellants has been framed makes it difficult to determine the issues posed. The appellant-intervenors set forth in the brief a point with four subpoints. The appellant Board repeats the point and subpoint in exactly the same language. The point is as follows:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO RESPONDENT AS TO DEFENDANT–INTERVENORS ARNOLD AND BAUER [AND DEFENDANT BOARD] IN THAT:

(A) The trial court's decree was without substantial evidence to support its conclusion that defendant-intervenors were obligated ... to make a public demonstration of their partisan party preference before other voters ...;

(B) The trial court's decree was against the weight of the evidence to support the granting of summary judgment in that the evidence showed that the manner in which partisan primaries are conducted in St. Louis County, Missouri, complied with the election laws by not compelling voters to vote in polling booths labeled Republican, Democrat, and non-partisan;

(C) The trial court's decree erroneously declared the law by holding that the manner in which partisan primaries are conducted in St. Louis County, Missouri violated §§ 115.225, 115.229, 115.395 and 115.397 RSMo, 1978, as amended.

(D) The trial court's decree erroneously applies the law to a factual circumstance which in all respects complied with the election laws of the State of Missouri, and specifically complied with §§ 115.225, 115.229, 115.395 and 115.397.

■ Subsections A and B do not raise any issue properly reviewable where a motion for summary judgment has been sustained. The evidentiary review of a court-tried case under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), is not involved in the review required in a case where summary judgment is granted. Review of a summary judgment is a two-step process, first, a determination that there is no genuine issue of fact requiring trial; second, that the judgment is correct as a matter of law. *Kaufman v. Bormaster*, 599 S.W.2d 35 (Mo.App.1980); *Brooks v. Cooksey*, 427 S.W.2d 498 (Mo.1968). The record in this case has been examined meticulously and no issue of fact appears. There is no dispute of fact; the issue is whether, under the facts shown, the judgment is correct as a matter of law. The argument portion of

the appellants' brief does not suggest a factual dispute. What the appellants do argue is that the trial court misinterpreted the law in applying it to the stipulated facts.

Despite the confusing and abstract nature of the points by resorting to the argument portion of the brief, the issues may be stated as follows:

1. Does the court's order that voting booths be labeled with partisan labels in a primary election impinge upon the secrecy of the ballot?

2. Is the requirement of the court's order that separate ballot labels be provided lawful?

3. Does the law permit the court to order separate voting booths for each party participating in the primary?

The appellants concede in connection with the first issue that the court's decree did not specifically order that the voting booths be identified with party labels. The court's order is couched in statutory terms and directs that a "voting device" for each party participating in the primary be provided. Appellants argue that this necessarily requires that the booths must be labeled so that voters will be able to vote properly. The essence of the argument is that by labeling the booths, "the secrecy of the ballot" is compromised and voters will be required to make a "public demonstration" of their partisan party preference before the other voters. In support of this argument, appellants cite Mo. Const. Art. VIII, §§ 2 and 3 (1945). In the brief, they say

Distilled, it is the argument of Defendant-Intervenors Arnold and Bauer that they need not wear Scarlett [sic] "D's", "R's", or "N's", before other voters in a polling place in order to participate in a partisan primary in Missouri.

It might be legitimately questioned why a voter who seeks to vote in a partisan primary would consider others' knowledge of that choice a matter of opprobrium or a

"scarlet letter" unless there were some impropriety or appearance of impropriety in the voter's choice. Missouri is and has been an "open primary" state in the sense that no prior party registration is or has been required as a prerequisite to participation. Primaries, nonetheless, are party elections seeking to find the candidates of a party whom the adherents of that party wish to seek office in the name of the party. Implicit in that process, is the notion that the voters who participate and vote for a party candidate want to elect him to the office he seeks. Under prior versions of the election code, there were provisions permitting challenge to a voter's choice of party in the primary and requiring upon such challenge an affidavit of support for the candidates of the party, whoever they might be. See §§ 120.460 and 120.470 RSMo 1959. The appellants argue that the failure of the legislature to continue these provisions in the election law indicates a legislative intent to remove any "public demonstration" of the voter's party preference. That assumption of intent has no support, other than its assertion. It is merely speculation as to legislative intent. The legislature might as well have concluded that the previous requirements were too rigorous and that a voter who was challenged was, in effect, deprived of his right to "split" his or her ticket if his or her nominee lost. Likewise, the oath could be read to require adherence to the electors for the Presidency of the particular party although under the Missouri primary system, the voter has no vote for the candidates for the office of the Presidency. Many other equally plausible reasons for the legislative action might be suggested. Absent some other confirmation such speculation can afford no basis for construction of the statute. In fact, the present statutes do not support the appellant's analysis of the omission. The statutes still require a public disclosure of the voter's party preference as the voter must announce to the election official which ballot is to be used. At least some other persons may be aware of that choice. The voter is handed a ballot, which, in the case at bar, is color-coded to designate the party selected. At least a portion of the ballot is visible in the voter's hands as he or she enters the booth. The ballot tag is removed by another official and any other voter present can determine the party chosen by the color of the tag by observation at either time when the tag is visible.

■ There is simply no expectation of absolute secrecy of party choice when a voter participates in a party primary. The appellants argue that the requirements of Art. VIII, § 3 require absolute secrecy, including the voter's choice of party. That construction of Art. III has not been found in any legal authority. To accept it would invalidate even the requirement that the voter announce his or her party preference. The vote referred to in the constitutional provision in the context of a primary is the selection of candidates, not the selection of a party. No one has ever contended that the requirement that the voter announce his or her party selection in the primary was a violation of the secret ballot. Appellants do not now so contend but concede that the requirement that the voter announce a party preference was upheld in *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83 (Mo. banc 1974), which rejected an argument that such a declaration was an additional qualification to vote not constitutionally permitted. Throughout the argument appellants have characterized the secrecy of the ballot as "absolute secrecy," and they cite statutes requiring that election officials not disclose how any person voted.

There is no doubt that absolute secrecy is imposed as to the vote, that is, to the choice of candidates. However, the very nature of a separate party primary and the statutes providing for it, show that the choice of the party is not subject to absolute secrecy as appellants argue.

■ The second issue requires consideration of the facts in light of the statutes.

At primary elections in St. Louis County, the ballot label and the ballot card together comprise the ballot. § 115.013(3) RSMo Supp.1984.[2] The parties stipulated that "the defendants in primary elections in St. Louis County utilize ballot labels which are inserted in a vote recorder, in each polling booth, which contain the names of candidates for office for each and every political party and ticket authorized by law to offer candidates for office at a primary election." The crux of this issue is that, in the ballot labels, the voter is confronted with the names of candidates of *not only* his chosen political party, but with the names of candidates of *all other* political parties as well. This runs squarely counter to the mandate of §§ 115.225.2(6), 115.395.1, and 115.397 RSMo 1978. § 115.225.2(6) states, "[n]o electronic voting system shall be approved unless it (6) Permits each voter in a primary election to vote for the candidates of *only one party* announced by the voter in advance." § 115.395.1 provides, "[a]t each primary election, there shall be as many separate ballots as there are parties entitled to participate in the election," and § 115.397 states, in pertinent part, "[i]n each primary election, each voter shall be entitled to receive the ballot of *one and only one political party*, designated by the voter before receiving his ballot." Read in conjunction, these sections clearly require that a voter be given a ballot (e.g., a ballot card and a ballot label) specific to the party he previously designated to the election judge. As a necessary corollary, the ballot, to permit the voter to vote for the candidates of his party alone, must contain only the names of those candidates within his designated party. This the ballot, as used in St. Louis County primary elections, does not do. It permits the voter, by giving him a ballot label containing the names of all of the candidates, to cast a vote for a candidate of a different political party than that he previously designated and potentially to cast a vote for a candidate within his party and one in another

party for the same race. If this occurs, the tabulating equipment rejects "each ballot on which a voter has voted for candidates of more than one party by not counting a vote punched in punch positions other than the party designated by the voter in advance to an election judge." Apparently, in St. Louis County the rejection causes the voter to lose only the vote "improperly" cast for a candidate of a different party. § 115.229.1 provides, however, that "[a]n automatic voting system may be used ... if the automatic tabulating equipment will reject *each ballot* on which a voter has voted for candidates of more than one party." Thus, the St. Louis scheme differs from that statutorily mandated and must fall.

Appellants attempt to counter this by pointing to §§ 115.225.2(8) and (9), which state: "No electronic voting system shall be approved unless it (8) Accurately counts all proper votes cast for each candidate and for and against each question; (9) Is set to reject all votes, except write-in votes, for any office and on any question when the number of votes exceeds the number a voter is lawfully entitled to cast." They assert, because the voter *properly* casts votes only for candidates within his designated party and because the automatic tabulating equipment rejects votes for candidates in other parties or double votes in the same race, the St. Louis County system complies with the statute. Appellants ignore, however, the implicitly conjunctive nature of the subsections of § 115.225.2 and the explicit mandate of § 115.225.2(6), requiring that voters be permitted to vote *only* for the candidates within the party the voter previously designated. They also ignore *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83 (Mo. banc 1974), wherein the court stated, "[h]ad the General Assembly intended that all of the ballots could be printed upon one sheet of paper and delivered to the voter, it would have so provided...." *Id.* at 87. Because the bal-

---

**2.** All statutory references are to RSMo 1978, unless otherwise indicated.

lots in St. Louis County primary elections do not comply with Chapter 115 RSMo 1978, the Election Code, the court correctly granted the Secretary's motion for summary judgment and ordered St. Louis County to provide the voters with ballot labels containing the names of only those candidates affiliated with the political party the voter previously designated to the election judge.

The third issue raised by the appeal is whether the court's order that the Board must in some fashion designate (e.g., label as Republican, Democratic, and non-partisan) the polling booths at primary elections is lawful. This involves the Secretary's interpretation, adopted by the trial court, of 15 CSR 30–10.030. The parties stipulated that "Defendants do not provide separate polling booths for each political party, and non-partisan issues in primary elections." First, the appellants question the validity of the regulation's promulgation and second, the Secretary's authority to promulgate it.

15 CSR 30–10.030 provides, in part, that "[i]n primary elections there shall be at least one [1] voting device for each eligible political party or ticket." The regulation was promulgated October 5, 1982, and, following a 30 day comment period, became effective February 11, 1983, after the statutorily mandated 90 days post-comment period. § 536.021 RSMo 1978. It was thus validly promulgated and has been in effect since that date. The Secretary likewise had the authority to promulgate this regulation. § 115.225.1. In granting the Secretary's motion for summary judgment, the court adopted his interpretation of the regulation, essentially requiring a labeling of the polling booths so that each booth pertains to only one political party.

■ Primaries are constitutional elections and regulations governing their process may be enacted in the exercise of the state's police power. *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83, 86 (Mo. banc 1974); *Totton v. Murdock*, 482 S.W.2d 65, 67–68 (Mo. banc 1972). Administrative regulations should be sustained if reasonable, *Garner v. Missouri Div. of Fam. Services*, 591 S.W.2d 27, 28 (Mo.App.1979), and will be sustained if they bear a rational relationship to an articulable state purpose. *Emily v. Missouri State Div. of Fam. Services*, 570 S.W.2d 783, 786 (Mo.App.1978).

■ 15 CSR 30–10.030 is rationally related to a legitimate state purpose, that of eliminating confusion and the possible disenfranchisement of voters. By in some fashion labeling the polling booth, the voter is able to go directly to the correct polling booth, i.e., the booth containing the ballot label corresponding to the ballot card for his designated political party. He does not enter a polling booth containing a ballot label from a different political party and risk voting for candidates of a different political party, thus losing his vote entirely as not "properly" cast, or risk having to search for a "correct" polling booth from among the booths confronting him. Much simpler, more effective, and more time-efficient is a system whereby the booths are plainly marked to eliminate the voter's confusion. As the *McClellan* court stated, however, the rationale for the regulation

> is not of decisive importance.... The legislature has the right and duty to make laws regulating the conduct of elections. These legal regulations must be enforced unless their application offends against the constitutional rights of the people to exercise their right to vote. The requirement that a primary voter receive the ballot he selects from an election official which necessarily requires the voter to make his ballot preference known to the election official is not an additional qualification for voting. Rather it is a procedure that is deemed appropriate to uniform and orderly elections where balloting is done at numerous polling places on election day throughout this state.

*McClellan, supra* at 89. The regulation and its interpretation, as adopted by the

trial court, effectuate the clear intent of §§ 115.225, 115.729, 115.395, and 115.397, by requiring that the St. Louis County polling booths be labeled according to party designation during primary elections.

The judgment of the trial court is affirmed.

All concur.