Stephen B. McCARNEY,
et al., Respondents,

v.

NEARING, STAATS, PRELOGAR
AND JONES, Appellants,

Stephen B. McCARNEY, et al., Relators,

v.

The Honorable Frank CONLEY,
Respondent.

Nos. WD 47120, WD 47157.

Missouri Court of Appeals,
Western District.

Oct. 19, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied
Jan. 25, 1994.

G. William Quatman, Shughart, Thomson & Kilroy, P.C., Kansas City, for appellants Nearing, Staats, Prelogar and Jones.

W. Dudley McCarter, Behr, Mantovani, McCarter & Cappiello, P.C., St. Louis, for respondents Stephen B. McCarney, et al.

Louis J. Leonatti, Seigfreid, Runge, Leonatti, Pohlmeyer, Hagan & Seigfreid, P.C., Mexico, for respondent Honorable Frank Conley.

Before BRECKENRIDGE, P.J., and BERREY and SPINDEN, JJ.

BRECKENRIDGE, Presiding Judge.

This proceeding involves the consolidation of two cases pertaining to the construction of the Hawthorne Educational Services Building, a two-story office building in Columbia, Missouri. One of the consolidated cases concerns an appeal from a suit filed by Stephen B. McCarney, Michele T. Jackson, McCarney's wife, and Hawthorne Educational Services, Inc. (Hawthorne) against Nearing, Staats, Prelogar & Jones (Nearing) in which the trial court denied Nearing's application to compel arbitration.[1] Nearing raises one point on appeal arguing that under the Federal Arbitration Act, the trial court must compel arbitration and erred in refusing to submit the case to arbitration because the contract provides for arbitration of all "disputes."

The second case involves whether this court's issuance of a preliminary writ of prohibition should be made absolute in a suit filed by Reinhardt Construction Company (Reinhardt) against McCarney. McCarney argues the following five points in support of his petition for writ of prohibition. In Point I, he argues that prohibition is the proper remedy because the trial court exceeded its judicial power by compelling McCarney to submit to arbitration; in the remaining points he asserts that the trial court erred in ordering McCarney to submit to arbitration in that: II) there is no binding arbitration provision in any contract or in the escrow agreement between McCarney and Reinhardt; III) Reinhardt waived its right to demand arbitration; IV) McCarney's counterclaim alleging fraudulent representation as to the escrow agreement is not covered by an arbitration provision; and V) an equitable mechanic's lien suit, not arbitration, is the exclusive remedy for Reinhardt's claims.

Nearing was hired to provide architectural services for the construction of the Hawthorne Educational Services Building. On April 17, 1989, Nearing and McCarney signed an agreement entitled "Standard Form of Agreement Between Owner and Architect." Reinhardt Construction Company (Reinhardt) was hired to serve as the general contractor for the project. McCarney and Reinhardt signed an agreement entitled "Standard Form of Agreement Between Owner and Contractor" on April 9, 1990.

On or about April 10, 1991, McCarney informed Reinhardt that it had fired Nearing and it did not hire a replacement architect. In order to complete the construction of the building, McCarney and Reinhardt executed an escrow agreement on August 28, 1991. The escrow agreement required McCarney to deposit $140,000 in an escrow account and set forth the manner in which the $140,000

---

1. On November 10, 1992, the trial court granted Nearing's motion to dismiss Jackson's claims and, thus, she is no longer a party to the appeal in this action. Jackson, however, continues to be a party to the writ proceeding. For convenience, this court will refer to the respondents in the appeal and the relators in the writ proceeding as "McCarney." This is appropriate because the issues properly raised do not require a distinc-

tion between such parties. This is true despite the fact that relators claim in the argument portion of their brief filed in support of their petition for writ of prohibition that there is no written agreement between Reinhardt and Relators Jackson and Hawthorne upon which arbitration can be compelled. Because the petition for writ of prohibition does not assert such matter, it will not be addressed.

was to be allocated to Reinhardt in return for the completion of certain work.

Thereafter, Reinhardt, Nearing, and Miller Sash & Door, one of Reinhardt's subcontractors, filed mechanic's liens against the Hawthorne property in the amounts of $140,000, $24,559, and $20,179.14, respectively. Nearing did not file suit to foreclose by April 1, 1992, the end of the statutory six-month period in § 429.170, RSMo 1986,[2] and its mechanic's lien expired as a matter of law. McCarney filed suit against Nearing on April 6, 1992. His amended petition, filed on June 4, 1992, alleged breach of contract and negligence. On June 24, 1992, Nearing filed a demand for arbitration with the American Arbitration Association in Kansas City, Missouri. Nearing filed an application to compel arbitration and to stay the lawsuit on July 16, 1992. In response, McCarney filed an application to stay arbitration. The trial court denied Nearing's application to compel arbitration and to stay the lawsuit. This appeal was filed in a timely manner thereafter. Under § 435.440.1(1), an order denying an application to compel arbitration is an appealable order. *Brookfield School v. Tognascioli et al.,* 845 S.W.2d 103, 104 (Mo.App.1993).

On June 5, 1992, Reinhardt filed suit against McCarney in the Circuit Court of Boone County seeking recovery of $140,000 allegedly due it under the escrow agreement. In Count I, Reinhardt's petition alleged that Reinhardt had completed all work set forth in the agreement but that McCarney refused to authorize the disbursement of the funds allocated for each item. Count II of Reinhardt's petition set forth a claim for foreclosure on the mechanic's lien filed by Reinhardt. Count III of Reinhardt's petition prays for recovery in quantum meruit for the amount of the unpaid labor, materials, supplies and equipment supplied to the Hawthorne project.

■ McCarney filed various pleadings in response to Reinhardt's petition including a counterclaim, motion to consolidate, answer and motion to add additional parties. On July 22, 1992, Reinhardt filed a "Motion to Stay Proceedings Pending Arbitration."

McCarney filed an application to stay arbitration on August 14, 1992. After hearing oral arguments on the various motions of the parties, the trial court entered its order sustaining Reinhardt's motion to stay proceedings pending arbitration. McCarney filed his petition for writ of prohibition. This court entered a preliminary order in prohibition and Respondent, the Honorable Frank Conley, filed his response. McCarney filed its reply. Thereafter, the matter was briefed and oral arguments were heard. The matter was submitted to the court for decision upon the record and briefs were filed. The facts stated in the petition for the writ will be taken as true and the matter ruled in a manner similar to a motion for judgment on the pleadings. *State ex rel. Dunphy v. Eversole,* 339 S.W.2d 506, 507 (Mo.App.1960).

This court will address the points raised in the appeal and the action for prohibition simultaneously as they generally are in regard to similar, if not identical, issues. In the interest of avoiding repetition, this court will not specifically refer to the points relied on in the parties' briefs. The first point raised by McCarney, however, will be addressed separately as it pertains to whether prohibition is an appropriate remedy.

McCarney argues in Point I that prohibition is the proper remedy because the trial court exceeded its jurisdiction by ordering McCarney to submit to arbitration since the dispute between McCarney and Reinhardt is not subject to arbitration. McCarney contends that unless an absolute order of prohibition is issued by this court, he will be subjected, without an adequate remedy of appeal, to duplicate proceedings and the possibility of conflicting determinations.

■ The writ of prohibition is an extraordinary remedy to be used cautiously and only in cases of extreme necessity. *State ex rel. Douglas Toyota v. Keeter,* 804 S.W.2d 750, 752 (Mo. banc 1991). Prohibition is primarily used to correct or prevent inferior courts and agencies from acting outside their jurisdiction. *Id.* Prohibition is not to be used in lieu of an appeal nor is it to be used as a substitute for the correction of alleged

---

**2.** All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

or anticipated judicial errors. *Id.* Neither is prohibition to be used to adjudicate disputes which will be adequately redressed during the ordinary course of judicial proceedings. *Id.*

Respondent argues that prohibition is not the proper remedy in this case because an order compelling arbitration is not a final appealable order. In support of his position, Respondent cites *McClellan v. Barrath Const. Co., Inc.,* 725 S.W.2d 656 (Mo.App. 1987), a case in which the court held that an order compelling arbitration was not a final judgment from which an appeal could be taken.

▮▮▮ Respondent is correct in his contention that an order compelling arbitration is not a final appealable order because § 435.440 of the Missouri Arbitration Act does not authorize an appeal from an order compelling arbitration. Respondent, however, is mistaken in his assertion that such requires this court to find that a writ of prohibition is not the proper remedy in the instant case. Although *McClellan* does prohibit McCarney from appealing the trial court's order compelling arbitration, *McClellan* is silent as to whether McCarney could challenge the order by seeking a writ of prohibition.

Respondent also argues that because McCarney can appeal an arbitration award under § 435.440, this court should, rather than issuing a writ of prohibition, require McCarney to proceed to arbitration and then exercise his right to appeal if he is aggrieved by the arbitration award. Respondent contends that such an appeal is an adequate remedy and, thus, prevents the issuance of a writ of prohibition. Respondent's argument is "one which is closely considered at the preliminary writ stage, and less so after the parties have briefed and argued the case on the merits." *State ex rel. St. Joseph Light & Power Co. v. Donelson,* 631 S.W.2d 887, 892 (Mo.App.1982). Since the preliminary writ has been issued and the parties have briefed and argued the arbitration issue, this court will decide the case upon its merits. *State ex rel. McClellan v. Kirkpatrick,* 504 S.W.2d 83, 85 n. 1 (Mo. banc 1974); *Donelson,* 631 S.W.2d at 892.

▮▮▮ The remaining issues in the instant case concern arbitration. Both the Federal Arbitration Act (FAA) and the Uniform Arbitration Act express the desire to enforce arbitration agreements as a matter of law to further the important public policy of resolving disputes without resort to the courts. *Village of Cairo v. Bodine Contracting Co.,* 685 S.W.2d 253, 258 (Mo.App.1985). Under both the FAA and the Missouri Uniform Arbitration Act, a written agreement to submit a present or future dispute to arbitration is "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The public policy favoring arbitration is so strong that once an agreement to arbitrate is proven, the arbitration clause will be construed in favor of arbitration unless the clause positively cannot be interpreted to cover the asserted dispute. *Id.* at 259.

## CHOICE OF LAW

McCarney contends that Missouri law applies to the contracts he executed with Reinhardt and Nearing. Although the Missouri Uniform Arbitration Act is based on the Uniform Arbitration Act as adopted by the Commissioners on Uniform State Laws, it contains an additional provision not found in the Uniform Act. *Bunge Corp. v. Perryville Feed & Produce,* 685 S.W.2d 837, 839 (Mo. banc 1985). That provision, § 435.460, states:

Each contract subject to the provisions of sections 435.350 to 435.470 shall include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read [sic] substantially as follows: "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."

▮▮▮ McCarney argues that the notice required by § 435.460 is absent from the arbitration provisions in the contracts with Reinhardt and Nearing, rendering such arbitration provisions unenforceable under Missouri law. Section 435.460 seeks to impose a prerequisite to arbitration which is in addition to the provisions of the FAA. *Bunge,* 685

S.W.2d at 839. Any requirement of state law which adds a requirement to the FAA not imposed by Congress is in derogation of the power of Congress to regulate interstate commerce and, therefore, "pro tanto invalid." *Id.* The Missouri Supreme Court held in *Bunge* that § 435.460 may not be applied to a contract within the coverage of the FAA to defeat such contract's arbitration provision. *Id.*

This court must resolve whether the instant case involves interstate commerce so as to invoke coverage of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. McCarney argues that Missouri law applies to the contract with Reinhardt because both McCarney and Reinhardt are Missouri residents. As to the contract with Nearing, McCarney contends that the notice provision is such a fundamental policy of Missouri law that this court should refuse to apply the FAA and instead enforce the notice provision of § 435.460.

The contract between McCarney and Nearing clearly involves interstate commerce because McCarney and Jackson are Missouri residents and Hawthorne is a Missouri corporation, while Nearing is a Kansas corporation. *Mesa Oper. Ltd. Part. v. Louisiana Intrastate Gas,* 797 F.2d 238, 243 (5th Cir.1986). Whether the contract between McCarney and Reinhardt involves interstate commerce requires a more lengthy analysis. In response to McCarney's motion to stay arbitration, Reinhardt filed the affidavit of Jerry Daugherty, vice-president of Reinhardt, which indicates that Reinhardt was a Missouri Corporation. Attachments to the Daugherty affidavit list twenty-nine suppliers, as well as the materials they supplied for the project, which are located in states other than Missouri. In *Brookfield,* 845 S.W.2d at 104–105, this court held that the construction project at issue involved interstate commerce, triggering the application of the Federal Arbitration Act (FAA), even though both parties to the contract were Missouri entities. The court based its holding on a finding that the project utilized construction materials purchased from out-of-state suppliers and manufacturers and shipped across state lines. *Id.* at 105. In light of *Brookfield,* this court finds that the Reinhardt contract involves interstate commerce and, therefore, the FAA must be applied.

Since the instant case involves interstate commerce requiring the application of the FAA, this court must apply the principle of *Bunge* and find that the arbitration provisions are not rendered unenforceable by the absence of the notice provision. McCarney's arguments as to the notice provisions of § 435.460 are without merit.

## ESCROW AGREEMENT

McCarney argues that the trial court erred in ordering him to submit to arbitration in that there is no binding arbitration provision in any contract between McCarney and Reinhardt. In addition, McCarney contends that there are no arbitration provisions in either the escrow agreement executed by McCarney and Reinhardt or in Reinhardt's waiver of mechanic's lien which are the bases for Reinhardt's suit and McCarney's counterclaim.

The 1987 edition of the "Standard Form of Agreement Between Owner and Contractor", AIA Document A111, was the original contract signed by McCarney and Reinhardt. Article 1.1 of this document states:

> The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein.... If anything in the other Contract Documents is inconsistent with this Agreement, this Agreement shall govern.

Such standard form agreement specifically states that "[t]he 1987 Edition of AIA Document A201, General Conditions of the Contract for Construction, is adopted in this document by reference." Article 4.5 of the "General Conditions of the Contract for Construction" governs arbitration. Article 4.5.1 states as follows:

**4.5.1 Controversies and Claims Subject to Arbitration.** Any controversy or Claim arising out of or related to the Contract or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court have jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a Claim as been referred to the Architect as provided in Paragraph 4.3 and no decision has been rendered.

The "Standard Form of Agreement Between Owner and Architect" was the form of the original contract signed by McCarney and Nearing. Such agreement contains the following arbitration clause in Article 7:

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

■■■ Both arbitration provisions require that all claims and disputes between the parties arising out of or relating to the respective agreements must be decided by arbitration. As a result, when any part of the contract involves interstate commerce, then the Federal Arbitration Act applies to all disputes between the parties under each respective contract. *Brookfield*, 845 S.W.2d at 105.

Section 4.3.1 of the "General Conditions of the Contract for Construction," which is a part of the contract between Reinhardt and McCarney, defines "claims and disputes" as follows:

**4.3.1 Definition.** A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

■■■ A general provision for the arbitration of all disputes, such as that in the Reinhardt contract which provides for the arbitration of "any controversy or claim", covers every breach, regardless of importance, that is asserted and denied, except breaches which constitute a repudiation of the arbitration provision itself. *Village of Cairo*, 685 S.W.2d at 261–62. In construing arbitration clauses, courts have categorized such clauses as "broad," which are clauses that cover all disputes arising out of a contract to arbitrate, or "narrow," which are clauses limiting arbitration to specific types of disputes. *McDonnell Douglas Finance v. PA. Power & Light Co.*, 858 F.2d 825, 832 (2nd Cir.1988). The arbitration clause in the Reinhardt contract fits within the definition of "broad" since it covers "any controversy or claim." The strong presumption in favor of arbitration is applied with even greater frequency when the clause at issue is broad. *Id.*

■■■ The escrow agreement clearly involves a claim or dispute arising out of the contract for construction of the Hawthorne Educational Services Building, especially when it is considered in light of the broad arbitration clause in the instant case. The escrow agreement arose out of the original contractual relationship and was an attempt by Reinhardt and McCarney to solve a dispute as to $140,000 owed Reinhardt and provide a schedule for incremental payment of the $140,000 as Reinhardt finished certain segments of work on the project.

McCarney's arguments as to the escrow agreement are without merit. McCarney does not cite authority for his contention that

Reinhardt abandoned its rights under the original contract by entering into the escrow agreement. The escrow agreement does not state an intention to supersede the provision of the original standard form agreement executed by McCarney and Reinhardt which makes the terms of the original contract applicable to all modifications in the agreement executed thereafter. The nature of the escrow agreement is such that it is a supplement or addendum to the original contract. The arbitration provision extends to the disputes arising from the contract which resulted in execution of the escrow agreement between the parties.

McCarney also argues that the allegations in his amended counterclaim in the Reinhardt action are not subject to any arbitration provision. He claims that the three counts in his counterclaim allege causes of action which do not assert the breach of an agreement containing an arbitration provision because such claims are based on the escrow agreement. Inherent in this court's holding that the escrow agreement is subject to arbitration is the conclusion that any cause of action arising therefrom is also subject to arbitration.

■ McCarney also states that his counterclaim is based on the August 28, 1991 "Waiver of Mechanic's or Materialmen's Lien." This court determines that McCarney's argument is without merit. The broad arbitration clause of the Reinhardt contract provides that the arbitration clause is applicable to any controversy or claim arising out of such contract. The waiver was negotiated and signed in an attempt to resolve the conflicts arising out of the original contracts. Therefore, any cause of action arising from the waiver of the mechanic's lien is subject to arbitration.

## WAIVER

■ Waiver issues in the context of arbitration must be evaluated in light of the federal policy which strongly favors arbitration. The United States Supreme Court stated in *Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) that:

The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Although the right to arbitrate under the FAA can be waived, the facts of each case determine whether waiver has occurred. *Berhorst v. J.L. Mason of Missouri, Inc.*, 764 S.W.2d 659, 662 (Mo.App.1988). A finding that arbitration has been waived is not favored and there is a presumption against waiver. *Id.* Both Missouri and federal courts have adopted the same three-factor test to establish waiver of the right to arbitrate. The test requires that the party seeking to establish waiver bear the burden of demonstrating that the alleged waiving party: "(1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that existing right; and (3) prejudiced the party opposing arbitration by such inconsistent acts." *Id.*; *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir.1991). In considering this three-factor test, any doubts as to whether waiver has occurred must be resolved in favor of arbitration. *Freeman*, 924 F.2d at 158. Whether the party opposing arbitration has been prejudiced by acts inconsistent with arbitration is a determination to be made on a case-by-case basis. *Id.* at 159. "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to the merits." *Id.*

■ With regard to the Reinhardt contract, McCarney claims that Reinhardt waived its right to arbitrate because Reinhardt filed a mechanic's lien and later filed suit without alleging in its petition that arbitration would be sought. McCarney asserts that such conduct is inconsistent with Reinhardt's right to arbitration and that such rights are waived by conduct inconsistent with arbitration even if no prejudice is demonstrated.

■ After considering the holding of *Freeman*, this court finds McCarney's allega-

tions to be without merit. The *Freeman* court involved a suit filed by Stifel, Nicolaus & Company, a securities brokerage firm, against two customers. Six months after filing the suit, Stifel moved to compel arbitration of all claims asserted in the suit. The court in *Freeman* recognized that the failure of a party to make a demand for arbitration prior to litigation may contribute to a finding of prejudice since the other party lacks notice of the intent to arbitrate. *Id.; See also Boogher v. Stifel, Nicolaus & Co., Inc.*, 825 S.W.2d 27, 30 (Mo.App.1992). The court found, however, that although Stifel acted inconsistently with its right to arbitration by initiating litigation and discovery on arbitrable claims, Stifel's actions did not prejudice the other parties. *Freeman*, 924 F.2d at 158–59. McCarney's claim that arbitration can be waived solely by acts inconsistent with arbitration, without a showing of prejudice, is thus erroneous.

■ In addition, McCarney claims that Reinhardt waived its right to arbitrate by failing to comply with the contractual condition precedent to arbitration which required Reinhardt to submit its claim to the architect prior to filing a demand for arbitration. McCarney's claim is again without merit. McCarney terminated Nearing from the project and did not replace Nearing with another architect. Reinhardt could not have submitted the claim to the architect prior to filing its demand because the project did not have an architect at the time of the demand. McCarney cannot fire the architect from the project and then assert such firing as a bar to Reinhardt's demand for arbitration since it was McCarney's actions that made compliance with the condition precedent impossible. Reinhardt did not waive the right to arbitrate by failing to file the claim with an architect.

■ This court next addresses McCarney's claim that Nearing waived its right to arbitration. Nearing filed a mechanic's lien against the Hawthorne property on October 1, 1991. On April 1, 1992, after the expiration of Nearing's six months to file a foreclosure proceeding, McCarney filed suit against Nearing. McCarney filed his amended petition on June 4, 1992. Nearing filed its arbitration demand on June 24, 1992. McCarney claims that the filing of the mechanic's lien was an action so inconsistent with arbitration that it constituted a waiver by Nearing of the right to arbitrate.

McCarney bears the burden of establishing the three-part test of *Berhorst* and *Freeman* which has been discussed above. Although McCarney cites a number of cases from other jurisdictions,[3] they do not aid McCarney in proving that he was prejudiced by Nearing's actions. It is unnecessary for this court to reach McCarney's argument that the filing of a mechanic's lien is an act inconsistent with the right to arbitrate, because McCarney does not prove sufficient prejudice from Nearing's action. McCarney asserts that he was prejudiced both from the filing of Nearing's mechanic's lien and the failure of Nearing to assert its arbitration demand in a timely manner. The prejudice McCarney claims is that he unnecessarily incurred duplicate expense and will incur additional expenses if arbitration is compelled. Although this court accepts McCarney's assertion as true, the mere fact that he has duplicate expenses without any showing of the extent of duplication or the amount of the expenses is insufficient to prove prejudice sufficient to support a waiver of a party's right to arbitration.

## EQUITABLE MECHANICS' LIEN CLAIMS

■ McCarney contends that the claims asserted by Reinhardt and Nearing in their mechanic's liens and arbitration demands must be adjudicated in one equitable mechanics' lien proceeding. McCarney argues that, rather·than arbitration, an equitable mechanics' lien suit is the exclusive remedy for the claims of Reinhardt and Nearing. Sections 429.270 and 429.280 set forth the

procedure for the enforcement and adjudication of the rights of multiple lienholders in an equitable action. The purpose of the equitable mechanics' lien action is to provide a method of enforcing multiple mechanics' liens which have been filed against the same property. *Dierks & Sons Lumber Company v. McSorley*, 289 S.W.2d 164, 168 (Mo.App. 1956). Before an equitable mechanics' lien action is allowable, there must be more than one mechanic's lien filed against the property. *Id.*; § 429.330. Once such an action is commenced, it is the exclusive method of litigating liens and other claims pertaining to particular property. *Meiners Co. v. Clayton Greens Nursing Center*, 645 S.W.2d 722, 724 (Mo.App.1982). An examination of the case law indicates that an equitable mechanics' lien action does not become the exclusive procedure for litigating mechanic's liens until it is filed. *See Id.; Dierks*, 289 S.W.2d at 168.

The essential premise of McCarney's argument is that an arbitration proceeding is the type of action encompassed by the requirements for equitable mechanics' lien suits. McCarney cites *State ex rel. Clayton Greens Nursing Center, Inc. v. Marsh*, 634 S.W.2d 462 (Mo. banc 1982), as authority for his claim that an equitable mechanics' lien suit prohibits separate actions involving the same construction project, including arbitration. *Clayton Greens Nursing Center* stands for the proposition that a contract action and garnishment proceeding is stayed by an equitable lien action, but does not involve arbitration. *Id.* at 465.

A review of the purpose behind arbitration reveals that McCarney mischaracterized such a proceeding by identifying it as a legal action. Arbitration is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution without resort to the courts. *Village of Cairo*, 685 S.W.2d at 258. To characterize it as a legal action is contrary to its nature and is an unreasonable construction of the equitable mechanics' lien statutes. Reinhardt and Nearing have a right to arbitration without regard to whether there are multiple mechanics' liens creating the basis for an equitable mechanics' lien action.

The order denying Nearing's motion to compel arbitration and to stay the lawsuit is reversed and the cause remanded with directions to the trial court to enter an order compelling arbitration and staying the lawsuit pending the outcome of the arbitration proceedings. The preliminary writ of prohibition is quashed and the proceeding on McCarney's petition for writ of prohibition is dismissed.

All concur.